**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                              CRIMINAL ACTION NO. 1:09-cr-00270

THOMAS CREIGHTON SHRADER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

Currently before the Court is Defendant Thomas Shrader's Motion to Revoke Detention Order [Docket No. 25].  Pursuant to a superseding indictment dated January 20, 2010, Defendant is charged with Interstate Stalking, in violation of 18 U.S.C. § 2261A(2)(A), and with Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Defendant appeared before Magistrate Judge R. Clarke VanDervort on November 24, 2009.  On that date, Magistrate Judge VanDervort held a preliminary hearing and also considered the United States' Motion to Detain Defendant.  Magistrate Judge VanDervort ordered that Defendant be detained pending trial, and later issued a Memorandum Opinion and Order that explained his reasoning and made corrections to his ruling.  Defendant now brings this appeal seeking a de novo review of Magistrate Judge VanDervort's detention order on the grounds that he is not eligible for a detention hearing and that Magistrate Judge VanDervort failed to consider alternatives to detention that would adequately assure the safety of any other person and the community.

## I. STANDARD OF REVIEW AND APPLICABLE LAW

The Bail Reform Act provides that a defendant shall be detained only if a judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the defendant as required or the safety of any other person and the community.  18 U.S.C. § 3142(e). Upon request of the United States, a detention hearing shall be held in a case that involves, *inter alia*, a crime of violence, or a felony case where the defendant has two prior convictions for a crime of violence.  18 U.S.C. § 3142(f)(1)(A),(D).  The Court's decision in a detention hearing is guided by the factors set forth in 18 U.S.C. § 3142(g).  These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties, employment, financial resources, past conduct, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  In order to obtain a detention order, the Government must demonstrate either (1) by clear and convincing evidence that "no conditions other than detention will reasonably assure the safety of any other person and the community," *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005) (citing 18 U.S.C. § 3142(f)(2)); or (2) by a preponderance of the evidence that detention is necessary to reasonably assure the appearance of the defendant at future court proceedings, *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001).

18 U.S.C. § 3145(b) provides, in pertinent part, that "[i]f a person is ordered detained by a magistrate judge, . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  Motions for review of detention orders under § 3145(b) warrant a de novo review by the district court.  *United States v. Clark*, 865 F.2d 1433,

1436 (4th Cir. 1989); *United States v. Williams*, 753 F.2d 329, 331 (4th Cir. 1985).  However, the Court need not hold a second detention hearing.  *Cf. United States v. Toler*, 684 F. Supp. 436, 437 (S.D. W. Va. 1988) (Haden, C.J.).

## II. DISCUSSION

Defendant is a former boyfriend of the alleged victim in this case, "DS."  On July 16, 1975, the Defendant, unhappy over the failed relationship, murdered, in the presence of DS, the mother of DS and a friend of DS that the Defendant believed was romantically involved with her.  Defendant was convicted of first degree murder, and sentenced to life in prison.  He was incarcerated until 1993, and remained on parole until 1999.[1]

The superseding indictment alleges that Defendant's harassment of DS continued throughout his incarceration and thereafter.  The superseding indictment states that in 1978, Defendant sued DS in the Circuit Court of Mercer County, claiming that DS breached a promise to marry him.  The superseding indictment states that until 1979, when DS moved to Texas with her husband, RS, in order to escape from Defendant, Defendant allegedly sent her letters insisting that she restart her relationship with him and marry him.  The indictment further states that, after DS and RS moved to Texas, Defendant repeatedly called the parents of RS from the 1980s until the early 1990s, asking for the whereabouts of DS and RS, and insisting that DS renew her relationship with him.

The superseding indictment alleges that, in the early summer of 2008, Defendant obtained the Texas contact information of DS and began calling her household once per week.  It further alleges that in August 2008, Defendant began calling DS every day.  On October 29, 2009,  the

---

[1]  Defendant also has a conviction for escape, in violation of West Virginia Code § 61-5-12a, as he temporarily escaped from incarceration in 1979.  In Defendant's thirty-two page letter to DS, he allegedly wrote that he went to spy on DS during his period of escape.  (Docket No. 13, ex. 1, at 27.)

3

superseding indictment alleges that Defendant sent, via United Parcel Service, a thirty-two page letter.[2] The letter concluded with the statement that DS would have two weeks to decide what to do before Defendant would "initiate [his] next step." A criminal complaint against Defendant was issued on November 12, 2009.

Two issues are before the Court: whether Defendant was eligible for a detention hearing, and whether the Government has demonstrated by clear and convincing evidence that no conditions other than detention will reasonable assure the safety of any other person and the community.

### A. Defendant's Eligibility For a Detention Hearing

As stated earlier, Defendant is charged with Interstate Stalking and Felon in Possession of a Firearm. As a preliminary matter, a detention hearing is warranted under 18 U.S.C. § 3142 if either of these charges can be deemed a crime of violence or if Defendant has been convicted of two prior crimes of violence. Defendant was eligible for a detention hearing on both of these separate and independent grounds. [3]

---

[2] For the purposes of reviewing the detention order, the Court accepts the United States' proffer and assumes, without deciding, that Defendant sent the letter to DS.

[3] However, there is not a rebuttable presumption under 18 U.S.C. § 3142(e)(2) that no condition or combination of conditions will reasonably assure Defendant's appearance or the safety of the community. While 18 U.S.C. § 3142(e)(2)(A) is satisfied due to Defendant's convictions for first degree murder, the requirements of 18 U.S.C. § 3142(e)(2)(B) and (C) are not met. Defendant did not commit those crimes while on release pending trial for a Federal, State, or local offense, and a period of five or more years has elapsed since the dates of his conviction and release from imprisonment.

### 1. Defendant has two convictions for a crime of violence

18 U.S.C. § 3142 (f)(1)(D) states that a detention hearing shall be held in a case that involves any felony if the defendant has been convicted of two or more crimes of violence.  Defendant in this case has two convictions for first degree murder, which is a crime of violence.  Accordingly, a detention hearing was appropriate, even though the two murder convictions arose from the same course of conduct.  *See United States v. Pereira*, 54 F.Supp.2d 40, 42, n. 5 (D. Mass. 2006) (comparing language of Bail Reform Act to language of Armed Career Criminal Act, the latter requiring "three previous convictions ... committed on occasions different from one another," 18 U.S.C. § 924(e)(1), in order to trigger the mandatory minimum sentence under that statute, and stating that "[t]he absence of such qualifying language in the Bail Reform Act suggests to the Court that the pretrial detention context does not require that the offenses arise out of separate criminal episodes.")

### 2. Defendant is charged with crimes of violence

#### i. Interstate Stalking

18 U.S.C. § 3142 (f)(1)(A) states that a detention hearing shall be held in a case that involves a crime of violence.  Defendant is charged with Interstate Stalking.  18 U.S.C. § 2261A(2)(A) provides that:

Whoever--

***

(2) with the intent--

    (A)      to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States;

    (B)      to place a person in another State or tribal jurisdiction, or within the special maritime and territorial jurisdiction of the United States, in reasonable fear of the death of, or serious bodily injury to--

5

            (i) that person;
            (ii) a member of the immediate family. . . of that person; or
            (iii) a spouse or intimate partner of that person;
  uses . . . any facility of interstate or foreign commerce to engage in a course of
conduct that causes substantial emotional distress to that person or places that person
in reasonable fear of the death of, or serious bodily injury to, any of the persons
described in clauses (i) through (iii) of subparagraph (B);
  shall be punished as provided in section 2261(b) of this title

Under 18 U.S.C. § 16(b), "an offense that is a felony and that, by its nature, involves a substantial

risk that physical force. . . may be used in the course of committing the offense" is a crime of

violence.  Defendant is charged under 18 U.S.C. § 2261A(2)(A), with intending to "kill, injure,

harass. . . or cause substantial emotional distress."  Such intentions involve a substantial risk of

physical force.  Accordingly, interstate stalking is a crime of violence.

Defendant claims otherwise, stating that the letter attributed to Defendant only caused

emotional harm, and that mailing a letter does not involve a substantial risk of physical force.

However, this argument is inapplicable.  Whether an offense qualifies as a "crime of violence," is

to be resolved by referring to the elements of the offense, rather than by a case-by-case factual

analysis.  *See United States v. Spry*, 76 F.Supp.2d 719, 721, n. 3 (S.D. W.Va.,1999) (Haden, C.J.)

(citing *United States v. Aragon,* 983 F.2d 1306, 1311-12 (4th Cir. 1993)).

### ii. Felon in Possession of a Firearm

Defendant is also charged with Felon in Possession of a Firearm, in violation of 18 U.S.C.

§§ 922(g)(1) and 924(a)(2).  Circuits are divided on whether this is a crime of violence, and the

Fourth Circuit has not spoken on the issue.  However, courts in this District, district courts elsewhere

in the Fourth Circuit, and other circuit courts have held that § 922(g) is indeed a crime of violence,

at least for purposes of 18 U.S.C. § 3142(f).  *Spry*, 76 F.Supp. at 721-23; *United States v. Ditrapano,*

Criminal No. 2:06-00134, 2006 WL 1805848, at *1-2, 2006 U.S. Dist. LEXIS 44189, at *3-5 (S.D.

W.Va. 2006) (Faber, C.J.); *United States v. Powers*, 318 F.Supp.2d 339, 341-344 (W.D. Va., 2004); *United States v. Chappelle*, 51 F.Supp.2d 703, 704-5 (E.D.Va.1999); *United States v. Aiken*, 775 F.Supp. 855, 855-57 (D. Md. 1991). *See also United States v. Dillard,* 214 F.3d 88, 92-97 (2d. Cir. 2000) (conducting a lengthy examination of the Bail Reform Act and its legislative history, and holding that 18 U.S.C. § 922(g)(1) is a crime of violence.) This Court adopts the reasoning of this line of cases, and finds that 18 U.S.C. § 922(g) is a crime of violence for the purposes of 18 U.S.C. § 3142(f).[4]

*B. 18 U.S.C. § 3142(g) Factors*

The position of the United States is that there are no conditions or combination of conditions other than detention that would reasonably assure the safety of any other person or the community. There have been no representations that there is a risk of Defendant's nonappearance. Accordingly, the Government's burden is to demonstrate by clear and convincing evidence that Defendant's release poses a risk to the safety of any other person or the community. The Court reviews the Government's proffered evidence and arguments in light of the factors set forth in 18 U.S.C. § 3142(g).

*1. Nature and Circumstances of the Offense Charged*

As stated earlier, Defendant is charged in a two count superseding indictment. He is charged with Interstate Stalking in Count One, and with Felon in Possession of a Firearm in Count Two.

---

[4] Commentators have also argued that gun possession cases are crimes of violence for the purposes of a detention hearing. *See, e.g.,* Matthew Miner, *Hearing the Danger of an Armed Felon–Allowing for a Detention Hearing Under the Bail Reform Act for Those who Unlawfully Possess Firearms*, 37 U. Mich. J.L. Reform 705 (2004).

Defendant faces maximum terms of imprisonment of five years on Count One and ten years on Count Two.

Count One alleges that Defendant has an obsession with DS and her husband that has lasted for decades.  Even after being incarcerated for murdering her mother and her friend, Defendant continued to contact DS and the family of RS, both from inside and outside the prison walls. Defendant also initiated a frivolous lawsuit against DS from prison.  The indictment states that even after DS and RS went into hiding to avoid Defendant, Defendant still sought to contact her and eventually managed to do so, first contacting her household by telephone and then by sending her a letter.

Count Two alleges that Defendant owns three firearms, which he is forbidden from having as a convicted felon.  The predicate convictions, as noted earlier, include murdering the mother and a friend of DS.

### 2. Weight of the Evidence

The Government has proffered substantial evidence linking Defendant to the offenses charged in the Indictment.  *Cf. United States v. Smith,* 79 F.3d 1208, 1210 (D.C. Cir. 1996) (holding that the government may proceed by way of proffer at detention hearings); *United States v. Chappelle*, 51 F. Supp. 2d 703, 706 (E.D. Va. 1999) (same).  With regard to Count One of the superseding indictment, the United States has offered the thirty-two page letter that Defendant allegedly sent DS.  The letter contains details only Defendant would know, and was signed with "You know the name."  (Docket No. 13, ex. 1, at 32)

With regards to Count Two, Felon in Possession of a Firearm, the Grand Jury indictment is sufficient evidence for the Court to conclude that there is probable cause to believe the Defendant committed the alleged offense.

### 3. History and Characteristics of Defendant

Given that he murdered her mother and her friend, Defendant has a history of violence towards the family and associates of DS.  In the thirty-two page letter that he allegedly sent DS, Defendant blamed DS for the murders that he committed. For example, Defendant wrote that "I only did what you forced me to do and you know it" (*Id.* at 3) and "I would not have shot at the front doorway from the bedroom if you had not been going for the front door." (*Id.* at 17).  Defendant also commented that "[n]ot a day in my life has gone by since July 16, 1975 that I cannot help of thinking of what you made happen, at your insistence you made push come to shove." (*Id.* at 18). Moreover, given the course of conduct laid out in the superseding indictment, Defendant clearly has been obsessed with DS over the past thirty-five years.

### 4. Nature and Seriousness of Danger to Others

Defendant allegedly made multiple implicit threats to DS in his letter.  He gave her an ultimatum to respond, and wrote that she will be responsible for any consequences: "With this letter your future and what happen's will be in your <u>own</u> hands! I would honestly suggest for your own good that you read this letter <u>fully</u> and completely!!" (*Id.* at cover page (in capital and bold letters)); "This time, after you make the decision you have to make, will dictate my response.  So you will know beforehand that the END results will be based upon your decision," (*Id*. at 28); "[r]unning

won't do you any good this time. It's time to face the piper."[5]  (*Id.* at 29)  As noted earlier,  Defendant gave DS two weeks to decide what to do "before [he would] initiate [his] next step."  (*Id.* at 32.) Given Defendant's history, these cannot be seen as idle threats.  He represents a serious danger to DS and her family.

     *C. Alternatives to Detention*

     Defendant also argues that Magistrate Judge VanDervort failed to consider alternatives to detention that would adequately assure the safety of any other person and the community.  In particular, Defendant points to a GPS monitoring device or tether as an alternative to detention, and argues that, given the distance between Texas and West Virginia, the probation officer would have plenty of time to alert the appropriate authorities if Defendant were to remove or tamper with his tether.  Defendant also argues that the Court consider the alternative of third-party custody, specifically suggesting Defendant's eighty-four year old aunt as a custodian.  Defendant's 1979 prison escape demonstrates that he has a history of escaping from custody, however, and a tether and/or third-party custodian would not stop Defendant from contacting DS and her family.  Further, "[n]either electronic monitoring nor the GPS system of surveillance defeats the resolute, resourceful, energetic, and non-compliant releasee." *United States v. Megahed*, 519 F.Supp.2d 1236, 1244 (M.D. Fla. 2007).  This Court strongly agrees with the Florida court, particularly in light of this Defendant's expressed intent and the steadfast determination that he has exhibited regarding DS over the course of many years.

---

  [5]  It appears that DS ran away when Defendant killed her mother and friend. Docket No. 13, ex. 1, p. 17.

*III. CONCLUSION*

After reviewing de novo the detention order pursuant to 18 U.S.C. § 3145(b), and for the reasons discussed above, the Court **FINDS** by clear and convincing evidence that no condition or combination of conditions could protect the safety of other persons and the community. The potential for Defendant to harm DS and her friends and family is greatly curtailed if he is in custody. Accordingly, the Court **AFFIRMS** Magistrate Judge VanDervort's Detention Order and **ORDERS** that Defendant remain in the custody of the United States Marshal pending trial.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:        February 8, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

11