IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**UNITED STATES OF AMERICA**

v.                                                                                              **Criminal No. 1:09-0270**

**THOMAS CREIGHTON SHRADER**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Pending is Defendant's Motion to Strike Prejudicial Surplusage filed on May 13, 2010. (Document No. 85.) Defendant asserts that paragraphs one through eleven of Count One of the Superseding Indictment charging him with violating 18 U.S.C. § 2261A(2) are irrelevant, inflammatory and prejudicial to him. Paragraphs one through eleven of the Superseding Indictment allege that Defendant had a relationship with DS which ended in 1974 (¶ 1.); Defendant began harassing DS in early 1975 by following and calling her (¶ 2.); Defendant shot and killed DS's mother and a friend who he thought was dating DS on July 16, 1975 (¶ 3.); Defendant was convicted of two counts of first degree murder for the killing of DS's mother and friend and sentenced to life in prison but was paroled in or about December, 1993 (¶ 4.); While he was incarcerated, Defendant sent DS harassing mail from about 1975 to about 1979 and sued DS in 1978 for breach of a promise to marry him (¶¶ 5 and 6.); DS married RS and they moved from West Virginia to Texas in October, 1979, to get away from Defendant (¶ 7.); Not knowing where DS had gone, Defendant continued harassing DS and RS by calling RS's parents every month through the 1980's and into the early 1990's insisting that he and DS should resume their relationship and attempting to find out where they were living (¶ 8.); In the early summer of 2008, Defendant learned DS's telephone number and began calling about once a week harassing DS and her family (¶ 9.); In August 2008, Defendant began calling DS's home almost every day to harass her (¶ 10.); and RS and DS requested that local

law enforcement intervene and tell Defendant to stop harassing them (¶ 11.). Citing United States v. Bowker, 372 F.3d 365, 388 (6th Cir. 2004), vacated on other grounds, 543 U.S. 1182, 125 S.Ct. 1420, 161 L.Ed.2d 181 (2005), Defendant states that three elements are required to prove a violation of 18 U.S.C. § 2261A(2): (1) the defendant intentionally used the mail or any facility of interstate or foreign commerce; (2) the defendant engaged in a course of conduct intending to place the victim in reasonable fear of death of, or serious bodily injury to, herself, her spouse or intimate partner, or a member of her immediate family; and (3) Defendant's conduct caused the victim to experience substantial emotional distress or placed her in reasonable fear of the death of, or serious bodily injury to, herself, an immediate member of her family or her husband or intimate partner. In view of these elements, Defendant asserts that his "history with DS, in particular [his] conviction for murdering DS's mother and her friend, is unquestionably inflammatory and unfairly prejudicial. The objectionable paragraphs, if permitted to remain, allow the Government to parade before the jury and the public-at-large inflammatory and prejudicial statements that are not relevant to proving the essential elements of the charge." (Document No. 85, pp. 2 - 3.)

The United States filed a Response on May 19, 2010. (Document No. 87.) Citing and quoting from United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979), and United States v. Williams, 445 F.3d 724, 733 - 734 (4th Cir. 2006), the United States gathers that "Defendant's motion can only be granted if the language sought to be struck is **both** irrelevant and prejudicial." (Id., p. 2 (Emphasis in Response.)) The United States asserts that paragraphs one through eleven are relevant for establishing Defendant's course of conduct. (Id., p. 3.) The United States states that "[p]aragraphs one through eleven set forth Defendant's prior threatening and harassing acts, all of which the United States alleges are a part of Defendant's course of conduct. The double homicide, the lawsuit, repeated attempts by Defendant over the years to contact DS and her family, and the August 2008

2

telephone call are all acts that are relevant to establish Defendant's overall course of conduct. Further, the allegations in paragraphs one through eleven are also relevant to show Defendant's purpose of mailing the thirty-two page letter mailed on October 26, 2009, to DS: to continue his lifelong pattern of harassing DS, RS, and their family." (Id.) The United States further asserts that paragraphs one through eleven are not prejudicial because "Defendant's own letter – the final act of harassment giving rise to the current charge – addresses the very content of paragraphs one through eleven that he now claims should be stricken from the Superseding Indictment. In his letter, which is admissible in its own right, Defendant references the double homicide and his continued attempts to contact DS that are alleged in paragraphs one through eleven. " (Id., p. 4.)

Defendant filed a Reply Memorandum in Further Support of his Motion to Strike Prejudicial Surplusage on May 24, 2010. (Document No. 95.) First, Defendant contends that the United States' position that "course of conduct" includes all of Defendant's inquiries respecting and contacts with DS and RS and their families from 1975 to 2009 without regard for whether or not Defendant used facilities of interstate commerce is "overly expansive and finds no support in the law." Defendant urges that "[t]he plain meaning of the phrase 'did knowingly use a facility of interstate commerce to engage in a course of conduct' means that the actions which constitute the 'course of conduct' are limited to those actions resulting from the knowing use of a facility of interstate commerce." (Id., p. 3.) Defendant asserts that each act in a "course of conduct" must involve the use of facilities of interstate commerce. Defendant argues that it is not enough that the use of facilities of interstate commerce occurred at some point during the course of conduct. (Id., p. 3.) Defendant cites United States v. Bell, 303 F.3d 1187 (9th Cir. 2002), as authority for "the view that the two acts that constitute a 'course of conduct' are two or more uses of a facility of interstate commerce . . .." (Id., pp. 4 - 5.) Second, Defendant claims that the phrase "course of conduct" as the United States

3

construes it is overly broad and vague. Defendant states that ""[t]o treat the phrase 'course of conduct' in the context of § 2261A(2) as covering any and all interaction between the defendant and the alleged victim, regardless of (1) whether the mail, an interactive computer service or facility of interstate commerce were used; (2) whether each act required the requisite intent to kill, injure, harass, or place under surveillance and (3) any time constraints, render 2261A(2) an extremely broad statute, that would cover otherwise innocent and lawful conduct." (Id., p. 7 (footnote omitted.)) Referring to the allegations contained in the Superseding Indictment that Defendant sued DS in 1978 for breach of a promise to marry him, called RS's parents in 1990 and began calling DS and her family in 2008, Defendant states that "the Government's construction of § 2261A(2) in light of its interpretation of the phrase 'course of conduct' provides no standards or time limits as to what actions taken by a defendant would satisfy the 'course of conduct' element. The average citizen as well as law enforcement (including prosecutors) would not have reasonable guidance in determining what actions violate § 2261A(2)." (Id., p. 8.) Third, Defendant asserts that if the allegations comprising "course of conduct" as stated in paragraphs one through eleven of Count One of the Superseding Indictment are not surplusage, the United States must prove each allegation beyond a reasonable doubt. (Id., pp. 8 - 9.) Finally, Defendant states that the surplus allegations contained in paragraphs one through eleven of Count One of the Superseding Indictment have been the basis for statements made in newspaper articles about this case which are unfairly prejudicial to Defendant and "contravene long standing prohibitions against pretrial commentary by prosecutors." (Id., p. 9.)

## **DISCUSSION**

The Court first considers Defendant's assertions respecting the meaning of the phrase "course of conduct." 18 U.S.C. § 2261A(2) provides as follows:

Whoever –

\* \* \*
    (2) with the intent –
        (A)    to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State . . .; or
        (B)    to place a person in another State . . . in reasonable fear of the death of, or serious bodily injury to –
            (I) that person;
            (ii) a member of the immediate family . . . of that person; or
            (iii) a spouse or intimate partner of that person;
uses the mail, any interactive computer service, or any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to, any of the persons described in clauses (I) through (iii) of subparagraph (B);

shall be punished as provided in section 2261(b) of this title.

18 U.S.C. § 2266(2) states that "[t]he term 'course of conduct' means a pattern of conduct composed of two or more acts, evidencing a continuity of purpose." Reading this definition into the statute in place of the "course of conduct" language, an element of the offense is the use of a facility of interstate commerce to engage in a pattern of conduct composed of two or more acts evidencing a continuity of purpose. Nothing in the statute or the definition of "course of conduct" specifies or indicates that each of the two or more acts evidencing continuity of purpose which constitute the pattern must involve the use of facilities of interstate commerce. Therefore, considering the language as defined in its context[1], "course of conduct" means two or more acts evidencing continuity of

---

[1] The Fourth Circuit stated as follows in *United States v. Maxwell*, 285 F.3d 336, 340 - 341 (4th Cir. 2002), respecting statutory construction:

'A fundamental canon of statutory construction requires that unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning.' *United States v. Lehman*, 225 F.3d 426, 428 (4th Cir. 2000)(internal quotation marks omitted). Another fundamental canon of statutory construction provides that '[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, and the broader context of the language as a whole.' *Robinson v. Shell Oil Co.*, 519

5

purpose only one of which must involve the use of facilities of interstate commerce.[2] Other Courts appear to have held this view as they have considered acts as part of courses of conduct though defendants did not use facilities of interstate commerce in committing them. United States v. Jordan, 591 F.Supp.2d 686, 708 (S.D.N.Y. 2008)(Conviction based upon evidence that defendant made false internet postings offering sex and housing at victims' telephone number, told victim that he would beat up her ex-boyfriend and had put him in the hospital, and harassed and threatened victim, her family and ex-boyfriend affirmed.); United States v. Ull, 2010 WL 1068143 (C.A.2(N.Y.))("The undisputed facts before the district court at sentencing demonstrated that following a brief romantic relationship in or about 1983, Ull harassed the victim and his family until her indictment in 2007, sending more than 1400 letters, faxes and e-mails, as well as telephone messages and messages deposited at the victim's residence, many overtly threatening and abusive.")

Having determined that every separate act in a course of conduct evidencing a pattern of harassment need not involve the use of a facility of interstate commerce, the Court will consider whether paragraphs one through eleven of the Superseding Indictment contain surplusage. Federal Rule of Criminal Procedure 7(c)(1) provides that an Indictment "must be a plain, concise, and

---

U.S. 337, 341, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997).

[2] The United States Supreme Court identified three broad areas which Congress may regulate under the Commerce Clause in *United States v. Lopez*, 514 U.S. 549, 558 - 559, 115 S.Ct. 1624, 1629 - 1630, 131 L.Ed.2d 626 (1995)("First, Congress may regulate the use of the channels of interstate commerce. Second, Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities. Finally, Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce . . .." (Citations omitted.)). In other criminal contexts, a single use of a facility of interstate commerce is sufficient to satisfy the commerce clause element. *See United States v. Faris*, 583 F.3d 756, 758 - 759 (11th Cir. 2009). Defendant in this matter is alleged to have used several facilities of interstate commerce in engaging in a course of conduct harassing DS and her family.

6

definite written statement of the essential facts constituting the offense charged . . ..." Rule 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment or information." The Fourth Circuit stated in United States v. Poore, 594 F.2d 39, 41 (4th Cir. 1979) that "[t]he purpose of Rule 7(d) is to protect a defendant against prejudicial allegations that are neither relevant nor material to the charges made in an indictment * * * or not essential to the charge * * * or unnecessary, or inflammatory * * *." (Citations omitted.) "[A] motion to strike surplusage from the indictment should be granted only if it is clear that the allegations are not relevant to the charge and are inflammatory and prejudicial." United States v. Williams, 445 F.3d 724,733 (4th Cir. 2006), quoting United States v. Rezaq, 134 F.3d 112, 1134 (D.C.Cir. 1998) as the Rezaq Court quoted the treatise Charles Alan Wright, Federal Practice and Procedure, and citing and quoting United States v. Hedgepeth, 434 F.3d 609, 612 (3rd Cir. 2006)(([I]nformation that is prejudicial, yet relevant to the indictment, must be included for any future conviction to stand and information that is relevant need not be struck if there is no evidence that the defendant was prejudiced by its inclusion."); See also United States v. Oakar, 111 F.3d 146, 157 (D.C.Cir. 1997); United States v. Scarpa, 913 F.2d 993, 1013 (2nd Cir. 1990). An allegation in an indictment which is relevant to the offense charged and prejudicial or inflammatory may therefore not be stricken as surplusage.

To prove that Defendant used a facility of interstate commerce to engage in a course of conduct with intent to kill, injure, harass or cause severe emotional distress, the United States must introduce evidence indicating that Defendant committed two or more acts with that intent one of which involved the use of a facility of interstate commerce. Paragraphs one through eleven of Count One of the Superseding Indictment allege a course of conduct which began in early 1975, during which Defendant killed DS's mother and friend, harassed DS by mail, sued her, harassed her husband's family members, and more recently called DS and her family in Texas, circumstances

which are more than relevant; they are material to the charge that Defendant violated 18 U.S.C. § 2261A(2). The allegations are therefore not surplusage and cannot be stricken from the Superseding Indictment. Considering in particular the allegations that Defendant was convicted of two counts of first degree murder and sentenced to life in prison for the killing of DS's mother and friend and harassed DS while he was incarcerated, these circumstances are relevant to the charge that Defendant violated 18 U.S.C. § 2261A(2) insofar as, if proven, they demonstrate how determined Defendant was in his intent to continue to pursue DS even after he was convicted of killing her mother and friend and sentenced to life in prison. The allegations are also relevant with respect to whether Defendant's letter placed DS in reasonable fear of death or serious bodily injury to her, her spouse or her family. The allegations that Defendant was convicted of the first degree murder of DS's mother and friend and sentenced to life in prison and nevertheless continued harassing DS and her family, being relevant to the elements of intent and reasonable fear, may not be stricken as surplusage. Accordingly, it is hereby **ORDERED** that Defendant's Motion to Strike Prejudicial Surplusage (Document No. 85.) is **DENIED**.

The Clerk is directed to transmit a copy of this Memorandum Opinion and Order to counsel of record.

ENTER: June 2, 2010.

R. Clarke VanDervort
United States Magistrate Judge