**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CRIMINAL ACTION NO. 1:09-cr-00270

THOMAS CREIGHTON SHRADER,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

      The Court has reviewed the United States' Motion in Limine to Exclude Letters Purportedly Written by Defendant's Deceased Mother [Docket 172] and Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 168]. After careful consideration, the Court grants the United States' motion in part, and denies it in part. Likewise the Court grants Defendant's motion in part, and denies it in part.

*I. BACKGROUND*

      The factual background of this case dates back to the 1970s. Defendant is a former boyfriend of the victim in this case, "DS." In 1975, after DS ended her relationship with Defendant, he murdered the mother of DS and a man that Defendant apparently believed DS was dating. Defendant was convicted of first degree murder and unlawful wounding in 1976. During his incarceration and afterwards, the Second Superseding Indictment alleges the Defendant continued to contact and harass DS and her family over the ensuing decades. Defendant currently faces two counts of stalking by use of interstate facility, in violation of 18 U.S.C. § 2261A(2), and one count

of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The instant case was initiated when Defendant allegedly sent a thirty-two page letter to DS.

In its motion, the United States seeks to exclude two handwritten letters purportedly written by Defendant's mother, Lila Shrader, on March 9, 1988. "[T]he United States interprets the handwriting on the first letter to provide an informal post-script that reads as follows: "[o]ne thing in the box. is a paper concerning the ['two' scratched out] guns of Thomas they were made over to me." (Docket 172).

Defendant, meanwhile, seeks to exclude certified records from a 1978 civil suit for breach of promise to marry that he filed against DS. The lawsuit was dismissed because the statute of limitations had run and because the alleged promise to marry was not in writing. Defendant also seeks to exclude statements made by DS concerning what she believed might have been a telephone call she received at her residence from Defendant in 2002 or 2003.

Further, Defendant seeks to exclude testimony from Ms. Carol Miller regarding statements made by Defendant relating to his possession of a firearm. A Federal Bureau of Investigation ("FBI") Memorandum of Interview ("302") received by Defendant on June 22, 2010, stated that, during a June 17, 2010, interview that Ms. Miller had with an agent of the FBI, Ms. Miller stated that following a traffic stop in which she was the only passenger, "[Defendant] was very upset about this stop and said something to the effect that he 'had a gun, a bat, under the seat for his protection.'" (Docket 168, ex. B at 5). Defendant states that a different 302 was received from the Government on June 23, 2010. In that 302, Ms. Miller was quoted as saying that Defendant informed her that he 'had a gun under the seat for his protection.'" (Docket 168, ex. C at 5). Unlike the other 302, there was no mention of a bat. Then, on June 25, 2010, counsel for Defendant and an investigator

with the Office of the Federal Public Defender interviewed Ms. Miller. During that interview, Ms. Miller stated that "she did not say a gun could have been under the seat to anyone, ever. [Defendant] did not give her a sense that what was under the seat was for protection," and that "she did not know what was under the seat nor did [Defendant] mention what it was." (Docket 168, ex. D at 2).

## II. APPLICABLE LAW

*A. Admissibility Under Rule 404, Relevance, and Lay Opinion Testimony*

Rule 404 (b) provides, in relevant part, that

[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial.

Because Rule 404(b) recognizes the admissibility of prior crimes, wrongs, or acts with only the one stated exception, it is understood to be a rule of inclusion. *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (citing *United States v. Aramony*, 88 F.3d 1369, 1377 (4th Cir. 1996)). The Fourth Circuit has articulated a four-prong test for the admissibility of prior-act evidence: (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must not be "substantially outweighed" by its prejudicial nature. *Queen*, 132 F.3d at 995. However, evidence of uncharged conduct is not "other crimes" evidence subject to Rule 404 if the uncharged conduct "arose out of the same series of transactions as the charged offense, or if [evidence of the uncharged conduct] is necessary to complete the story of the crime on trial." *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir. 2008)

3

(internal citation omitted); *see also United States v. Chin*, 83 F.3d 83, 88 (4th Cir. 1996) ("Other criminal acts are intrinsic when they are inextricably intertwined or both acts are part of a single criminal episode or the other acts were necessary preliminaries to the crime charged.") (internal quotation marks omitted).

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Federal Rule of Evidence 401. Except as otherwise provided, all relevant evidence is admissible. Federal Rule of Evidence 402. Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Under Rule 403, evidence may be excluded "only if the evidence is unfairly prejudicial and, even then, only if the unfair prejudice substantially outweighs the probative value of the evidence . . . . 'Evidence is unfairly prejudicial . . . when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the probative value of the offered evidence.'" *Siegel*, 536 F.3d at 319 (quoting *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006)).

Further, Federal Rule of Evidence 701 provides that opinion testimony by lay witnesses "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

*B. Hearsay, the Ancient Document Exception, and Statements in Documents Affecting an Interest in Property*

Hearsay is not admissible unless otherwise provided. Federal Rule of Evidence 802. "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." Federal Rule of Evidence 805.

"Statements in a document in existence twenty years or more the authenticity of which is established" are not excluded by the hearsay rule. Federal Rule of Evidence 803(16) ("the ancient document exception"). For hearsay evidence to be admitted under this exception, the proponent of the document must provide "[e]vidence that a document . . . in any form, (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where it, if authentic, would likely be, and (C) has been in existence 20 years or more at the time it is offered." Federal Rule of Evidence 901(b)(8).

Federal Rule of Evidence 803(15) provides that "[a] statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document." "Under the plain meaning of Rule 803(15), hearsay statements are admissible if they are contained within a document that affects an interest in property, if the statements are relevant to the purport of the document, and if dealings with the property since the document was made have not been inconsistent with the truth of the statements." *United States. v. Boulware*, 384 F.3d 794, 807 (9th Cir. 2004) (citation to *Silverstein*, *infra*, omitted); *Silverstein v. Chase*, 260 F.3d 142, 149 (2d Cir. 2001) (stating that "[t]he requirements for admissibility under Rule 803(15) are that the document is authenticated and

trustworthy, that it affects an interest in property, and that the dealings with the property since the document was made have been consistent with the truth of the statement") (citation to *Weinstock*, *infra*, omitted); *United States v. Weinstock*, 863 F. Supp. 1529, 1534 (D. Utah 1994) (same, and stating that "[a] document does not have to be a dispositive document to be admissible under Rule 803(15) if the document otherwise affects an interest in property."); *Compton v. Davis Oil Co.*, 607 F.Supp. 1221, 1229 (D. Wyo. 1985) (stating that " the exception to the hearsay rule concerning records and instruments affecting interests in property is based upon the reliability of such documents . . . . Such instruments are executed in relation to serious and carefully planned transactions, and the financial stake in the transaction, plus the obvious reliance upon the truth of statements made in such instruments by third parties are adequate to at least imply that the recitals in such instruments are trustworthy.") (internal citations omitted). *See also* 5-803 *Weinstein's Federal Evidence* § 803.17 (stating that "for the exception to apply to a recital of fact contained in a property-affecting document, the proponent must establish that 'the matter stated was relevant to the purpose of the document.' In addition, the exception does not apply if the opposing party shows that there have been dealings with the property since the making of the document that are inconsistent with either the truth of the statement or the purported effect of the document. The exception applies to documents affecting both personal property and real property. In this regard, the document must be one that purports 'to establish or affect an interest in property,' but need not actually be dispositive, although that is usually the case.").

### III. ARGUMENT

*A. The Letters Purportedly Written by Defendant's Mother*

The United States argues that it has no information concerning the circumstances of how, where and by whom the letters have been kept over the past twenty-two years; Defendant apparently intends to introduce the letter via the ancient document exception. It further argues that the post-script in one letter mentioning guns is inadmissible as double hearsay, as Defendant has not introduced a hearsay exception to the second level of hearsay contained in the statements made about the paper concerning the two guns. The United States also argues that the other letter is irrelevant and therefore inadmissible.

In response, Defendant argues that the second level of hearsay is admissible through Federal Rule of Evidence 803(15), "Statements in documents affecting an interest in property." He further requests that the Court defer ruling on the United States' motion until a proper foundation for the letters can be made in Court through Ms. Elizabeth Jones, the eighty-five year old woman who lives with Defendant and who has been described to the Court as his aunt and/or adopted sister.

*B. Records of the 1978 Civil Suit by Defendant Against DS*

Defendant argues that certified records from Defendant's 1978 breach of promise to marry lawsuit against DS should not be admitted. Defendant argues that the suit was not dismissed on the grounds of frivolity or bad faith, and that he "lawfully filed a suit for what he believed was a contractual breach and the circuit court accorded the suit the attention it deserved." (Docket 168 at 3). Defendant argues that the United States should "not now be permitted to characterize the 32-year-old law suit as evidence of harassment and then seek to introduce the same in support of its theory that [Defendant] engaged in a course of conduct to harass, intimidate and cause substantial emotional distress to DS in 2009. The 1978 suit does not support any element of 18 U.S.C. §

2261A(2)." *Id.* Defendant also argues that records from the suit are not admissible under Federal Rules of Evidence 403 and 404(b). He claims that

> the jury may view the suit as one that should not have been filed against DS. Evidence of the suit may therefore be unfairly prejudicial to [Defendant] as it tends "to subordinate reason to emotion" as the jury may view his decision to file the suit in 1978 as vindictive. The jury may resent his filing of the suit, regardless of its legal merits, and their individual and collective resentment may spill over into their consideration of whether the Government has proved each element of the stalking charge beyond a reasonable doubt. The suit then becomes relevant only to establish [Defendant]'s general character as opposed to establishing an essential element of 18 U.S.C § 2261A(2). Similarly, the jury may feel compelled to weigh the merits of the 1978 suit instead of the merits of the Government's case against [Defendant] in 2010. Their judgment of the merits of the 1978 suit will therefore cause confusion amongst the jurors, which will outweigh the 1978 suit's dubious probative value in this case.

*Id.* at 3.

The United States disagrees. It simply refers the Court to arguments that it made in its response to Defendant's first motion in limine. *See* Docket 129. It apparently argues that the civil suit is relevant to establishing a course of conduct by Defendant; 18 U.S.C. § 2261A(2) requires that the United States prove that Defendant engaged in a "course of conduct" towards DS and her husband, RS. The United States argues that the civil suit is evidence that establishes a 'continuity of purpose' under [18 U.S.C.] Section 2261A(2) and 2266.[1]

The United States further argues that the records from the civil suit are, in the alternative, admissible under Rule 404(b). The United States argues that they are relevant to issues other than character, such as intent and motive, and that they help establish elements of the offense, such as Defendant's intent for using a facility of interstate commerce, the course of conduct, and whether the victims were in reasonable fear of death or serious bodily injury or suffered substantial emotional

---

[1] 18 U.S.C. § 2266(2) defines "course of conduct" as "a pattern of conduct composed of 2 or more acts, evidencing a continuity of purpose."

8

distress. The United States further argues that the records are reliable evidence and that they are not unfairly prejudicial, as they are probative of his intent and involve acts within the course of conduct.

*C. The 2002 or 2003 Telephone Call Allegedly Made by Defendant to DS*

Defendant argues that statements made by DS concerning what she believed may be a telephone call she received at her residence from Mr. Shrader in 2002 or 2003 should be excluded. He argues that as the United States has not disclosed any evidence to corroborate her claim, the proffered testimony is unreliable and should be excluded. The United States disagrees. It argues that DS's belief that the caller was Defendant is admissible as lay opinion under Federal Rule of Evidence 701 since it is rationally based on her perceptions. It further argues that the conclusion of DS that Defendant was the caller "is helpful to determine a fact at issue – whether Defendant used interstate facilities to engage in a course of conduct aimed at putting DS, RS and their family in reasonable fear of death, serious bodily injury or causing them substantial emotional distress." (Docket 189 at 3). It concludes that the jury will determine what weight to give the testimony of DS in this matter, regardless of whether it is corroborated.

*D. Testimony of Ms. Miller*

Defendant argues that Ms. Miller is "unclear whether or not [Defendant] actually said that what was under his seat was a firearm, or some other item, such as a bat. There is no indication that Ms. Miller actually saw a firearm under the seat, nor does she indicate that she ever saw [Defendant] in the possession of a firearm." (Docket 168 at 5). Therefore, he argues, her statements as memorialized in both 302s are unreliable and will only confuse the jury and be a waste of time. Defendant further argues that, given the statements that Ms. Miller made to Defendant's counsel and investigator, she cannot truthfully testify that Defendant told her that he had a gun under his car seat.

9

Accordingly, Defendant argues, her testimony would be irrelevant since she did not hear Defendant say anything about a gun being underneath his seat.

The United States disagrees. It argues that Miller's statement is admissible under Rule 404(b). It claims that the evidence is relevant to Defendant's intent, and absence of mistake or accident, in possessing firearms; that it helps prove that Defendant "knowingly" possessed the firearms seized from his residence; that the evidence is reliable since it is a party-opponent admission under Rule 801(d)(2)(A) and that Ms. Miller is a disinterested third party and former friend of Defendant; and that Defendant has not met his burden of showing that the probative value of her testimony is substantially outweighed by prejudice. The United States further points out that Defendant will be able to impeach Ms. Miller with her prior inconsistent statements, and that the jury can determine what weight to give them.

## IV. DISCUSSION

### A. The Letters Purportedly Written by Defendant's Mother

The Court finds that the postscript is inadmissible. While the Court agrees that the second level of hearsay might be overcome by the exception for statements in documents affecting an interest in property, determining the applicability of the exception would violate Rule 403, as the Court would need to undertake a mini-trial to determine whether the requirements of *United States v. Weinstock* and its progeny have been met with regards to the "paper" referred to in the postscript. The Court, therefore, finds that the probative value of the postscript is substantially outweighed by confusion of the issues and considerations of undue delay and waste of time.

Further, the Court finds that to the extent that the letters deal with ownership of the guns, the letters have minimal probative value. First, there is no indication in the "writing" that those guns

are the same ones alleged in the indictment in this case. Most importantly, Defendant is charged with felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Possession, not ownership, is the issue in this case. This adds to the fact that any possible probative value in the postscript is substantially outweighed by the risk of confusion of the issues.

To the extent that Defendant wishes to admit the letters for other purposes, the Court will reserve authenticity and relevancy determinations for trial. Therefore, the Court grants the United States' motion in part, and denies the same in part.

*B. Records of the 1978 Civil Suit by Defendant Against DS*

The Court finds that the records from Defendant's 1978 civil suit against DS are admissible as evidence of the instant offense, or in the alternative, are admissible as other acts evidence under Rule 404. The records are admissible as evidence of the instant offense because they are evidence of the course of conduct that the United States must prove at trial. Given the duration of the harassment alleged in this case, the records also are "necessary to complete the story of the crime on trial." *Siegel*, 536 F.3d at 316.

The records are also admissible as other acts evidence under Rule 404. The records are relevant to Defendant's intent and motivation. The records are further necessary to prove an element of the crime charged, such as Defendant's intent for using a facility of interstate commerce, the course of conduct, and whether the victims were in reasonable fear of death or serious bodily injury or suffered substantial emotional distress. The Court finds that the records are reliable, as they are certified copies from the Circuit Court of Mercer County, and that their probative value is not substantially outweighed by any unfair prejudice. The Court finds that Defendant's argument that the jury will be confused by weighing the merits of the 1978 suit instead of the merits of the

United States' case against Defendant is speculative, at best. Further, it is not so much the merits of the 1978 suit as its filing which is probative in this prosecution. Moreover, the Court finds Defendant's contention that the jury's resentment over the 1978 suit will "spill over" into its deliberations of the instant case to also be speculative and lacking merit. Upon request, the Court can give a limiting instruction that addresses the jury's appropriate consideration of the letter.

*C. The 2002 or 2003 Telephone Call Allegedly Made by Defendant to DS*

The Court finds that testimony regarding the alleged 2002 or 2003 telephone call should not be excluded. DS's belief that the caller was the Defendant is admissible as lay opinion. Moreover, DS's *belief* that the caller was the Defendant is probative given the requisite statutory elements of the charged offense. Further, the Court finds that the jury will be able to take any lack of corroborating evidence into consideration when it is determining how much weight and credibility to give to such testimony.

*D. Testimony of Ms. Miller*

The Court finds that Ms. Miller's testimony is inadmissible under Rule 404(b). Count Three of the Second Superseding Indictment alleges that Defendant possessed three specific weapons on or about November 13, 2009, the date of his arrest. There are no indications of when Ms. Miller took the car ride in question with Defendant, and whether that ride was at all contemporaneous to November 13, 2009. Nor are there any indications of what kind of firearm might have been underneath Defendant's seat or whether the firearm was one of the three guns listed in the Second Superseding Indictment. Accordingly, the Court finds that her testimony on this issue is not relevant. If anything, evidence that the Defendant possessed "some uncharged gun on some

uncharged date" would be forbidden by Rule 404(b) in that it would simply establish Defendant's propensity to possess firearms.

Even if one assumes Ms. Miller's testimony is relevant, its probative value is substantially outweighed by unfair prejudice, as Defendant's possible possession of a firearm on an unspecified date has minimal probative value compared to the substantial prejudice that would be wrought by the strong danger of the jury making a propensity finding.[2]

### *V. CONCLUSION*

For the reasons stated above, the Court **ORDERS** the United States' Motion in Limine to Exclude Letters Purportedly Written by Defendant's Deceased Mother [Docket 172] **GRANTED** in part, and **DENIED** in part. The Court further **ORDERS** Defendant's Motion in Limine to Exclude Other Bad Acts Evidence at Trial [Docket 168] **DENIED** in part, and **GRANTED** in part.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, to the United States Attorney, to the United States Probation Office and the United States Marshal.

ENTER: July 9. 2010

_____
IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[2] The Court disagrees with Defendant's argument that Ms. Miller's inconsistent statements preclude her from testifying. The remedy for such inconsistences is not preclusion, but a stern examination of the witness by counsel during the former's testimony. *See* 5 John Henry Wigmore, *Evidence in Trials at Common Law* § 1367, at 32 (James H. Chadbourn ed., 1974) (stating that cross examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth.").