IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

**UNITED STATES OF AMERICA**

v.  Criminal No. 1:09-0270

**THOMAS CREIGHTON SHRADER**

## MEMORANDUM OPINION AND ORDER

Three Motions to Compel are pending: (1) Defendant's Motion to Compel the United States to produce an interoffice memorandum of an FBI Special Agent respecting statements which RS, an alleged victim in this matter, made to the Special Agent (Document No. 171.); (2) Defendant's Motion to Compel DS's and RS's Telephone Numbers in 2002/2003 (Document No. 229.); and (3) the United States' Motion for Early Production Pursuant to Rule 17(c)(1) of Documents by Attorney Phillip Scantlebury (Document No. 233.).

**1.    Defendant's Motion to Compel the United States to Produce Interoffice Memorandum (Document No. 171.).**

On June 29, 2010, Defendant filed a Motion to Compel the United States to produce the interoffice memorandum of FBI Special Agent Rodriguez respecting statements which RS, an alleged victim in this matter, made to him during a long telephone conversation on or about November 2, 2009. (Document No. 171.) Defendant states that Special Agent Rodriguez testified at a pretrial motions hearing on June 15, 2010, that he had a very long telephone conversation with RS about Defendant's conduct as alleged in Counts One and Two of the Second Superseding Indictment beginning in the 1970s and its impact upon his and his wife DS's lives and DS's mental condition. Defendant states that Special Agent Rodriguez testified that he prepared an interoffice memorandum from notes which he had taken during his conversation with RS and had not given a

copy of them to counsel for the United States. Defendant states that his attorney requested that the District Court order the United States to produce a copy of the interoffice memorandum, and the District Court denied it allowing him to raise the issue and submit authority supporting his request. Defendant contends that the interoffice memorandum must be disclosed because (1) RS's statements to Special Agent Rodriguez pertain to Defendant's alleged course of conduct and allegations that his conduct has caused DS and RS to experience substantial emotional distress, elements which the United States must prove, and (2) the Office of the Attorney General has issued a "Guidance for Prosecutors Regarding Criminal Discovery" encouraging prosecutors to examine documents prepared by investigating agencies like Special Agent Rodriguez' interoffice memorandum and disclose information contained therein relevant to their prosecutions.[1] Defendant states that Special Agent Rodriguez' "telephone conversation with RS addressed the very elements that the Government is tasked with proving beyond a reasonable doubt at [Defendant]'s trial on Counts One and Two of the Second Superseding Indictment – the very same elements which counsel is duty bound to defend. The contents of the contemporaneous record of RS's statements concerning the alleged 'course of conduct' perpetrated by [Defendant], as well as the effects that such acts had on DS's mental health, should therefore be produced in accordance with the Government's own guidance, which itself reflects the principles of disclosure set forth in Rules 16 and 26.2 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, as well as *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972)."

---

[1] Defendant attaches a copy of the Attorney General's "Guidance for Prosecutors Regarding Criminal Discovery" and points out that section B specifies categorically what prosecutors should examine. Subsection 5 pertains to "Substantive Case-Related Communications" and Subsections 8 and 9 pertain to "Information Obtained in Witness Interviews" and "Witness Statement Variations and the Duty to Disclose".

On July 9, 2010, the United States filed a Response to Defendant's Motion to Compel. (Document No. 196.) The United States asserts that the Attorney General's "Guidance for Prosecutors Regarding Criminal Discovery" does not require the United States to disclose the interoffice memorandum; rather, it states that "[i]t provides perspective guidance only and is not intended to have the force of law or to create or confer any rights, privileges, or benefits." The United States further contends that Defendant has no constitutional right to discovery and Special Agent Rodriguez' "internal communication . . . is not discoverable."

Defendant filed a Reply to the United States' Response on July 16, 2010. (Document No. 227.) Acknowledging that "there is a general prohibition against producing internal memoranda used by Government agencies", Defendant asserts that the United States should examine Special Agent Rodriguez' interoffice memorandum and disclose information contained in it relevant to its prosecution. To the extent that RS informed Special Agent Rodriguez about circumstances which occurred over the years and how DS was impacted mentally, Defendant states that "[a]ll of this information is relevant to proving elements of Counts One and Two, such as whether [Defendant] caused (and intended to cause) substantial emotional distress to DS and RS and whether [Defendant] engaged in a course of conduct using facilities of interstate commerce. It is this information for which [Defendant] seeks disclosure, and not the document itself."

Defendant asks that the Court require the United States to disclose Special Agent Rodriguez' written summary of his conversation with RS as it may contain information which the United States must disclose under Federal Rule of Criminal Procedure 16(a)(1), Brady and Giglio. Under Rule 16(a)(2), however, an agent's summary of a conversation with a witness is protected against discovery as it is the agent's understanding respecting matters discussed during the conversation and

3

work product prepared during the criminal investigation. Federal Rule of Criminal Procedure 16(a)(2) provides that

> Except as Rule 16(a)(1) provides otherwise, this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500.[2]

It appears that Defendant is requesting more broadly that the Court order the United States to do what it is otherwise required to do under Rule 16(a)(1), Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 - 1197, 10 L.Ed.2d 215 (1963)(disclose evidence favorable to Defendant on the issues of guilt and punishment) and Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)(disclose evidence which would impeach the United States' witnesses including their inconsistent statement, plea and immunity agreements.) Rule 16(a)(2) does not modify or diminish in any way the United State's obligations under Rule 16(a)(1), Brady and Giglio. If the

---

[2] 18 U.S.C. § 3500, the Jencks Act, much of which was incorporated into Federal Rule of Criminal Procedure 26.2, appears to be inapplicable as it establishes the procedure by which a defendant may obtain the written or recorded or transcribed oral statement of a government witness providing as follows at subsection (a):

> (a) In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

*United States v. Roseboro,* 87 F.3d 642, 645 - 646 (4th Cir. 1996); *United States v. Hinton*, 719 F.2d 711, 722 (4th Cir. 1983)("[T]he investigative notes of a government agent, made in the course of interviewing witnesses, which are later incorporated in the agent's formal 302 report, are not statements within the meaning of Section 3500(e)(1).") Defendant is requesting Special Agent Rodriguez' interoffice memorandum which is a summary of his conversation with RS and not RS's statement as defined in Section 3500(e) and Rule 26.2(f).

conversation between Special Agent Rodriguez and RS involved information which must be disclosed under Rule 16(a)(1), Brady and Giglio, the Court expects the United States to be mindful of its obligation to disclose such information. It is not evident that the United States has failed to disclose information as the Rule and decisions of the Supreme Court require. Because Special Agent Rodriguez interoffice memorandum is not discoverable and it is not evident that the United States has violated Rule 16(a)(1), Brady and Giglio, the undersigned will deny Defendant's Motion to Compel. (Document No. 171.)

### 2. Defendant's Motion to Compel DS's and RS's Telephone Numbers in 2002/2003 (Document No. 229.).

On July 20, 2010, Defendant filed a Motion to Compel DS and RS's Telephone Numbers in 2002/2003. (Document No. 229.) Defendant states that the United States "intends to elicit from DS testimony that she believes [Defendant] called her home sometime in 2002/2003 asking to speak with her daughter." Defendant advises that he filed a Motion in Limine to exclude DS's testimony in this regard on grounds that it is uncorroborated and the District Court denied it. Thereafter, Defendant's counsel requested that the United States provide DS and RS's telephone numbers in 2002 and 2003 so that he could request a subpoena. Defendant states that the United States did not provide the requested information. On July 26, 2010, the United States filed a Response to Defendant's Motion. (Document No. 246.) The United States advises that it "provided the known phone numbers for D.S. and her husband, R.S. Further, although not obligated, the United States notified Defendant that the United States understands that the call records for D.S.'s current home number are not available for the 2002/2003 time period." The United States further states that though it is not obligated to get additional information from DS and RS at Defendant's request, it learned from RS that the call was received on their home phone number which has not changed and

5

is the same as was previously provided and the provider was Alltel. It appears that the United States has provided the information which Defendant requested. Defendant's Motion to Compel DS and RS's Telephone Numbers in 2002/2003 (Document No. 229.) will therefore be denied as moot.

### 3. United States' Motion for Early Production Pursuant to Rule 17(c)(1) of Documents by Attorney Phillip Scantlebury (Document No. 233.).

On July 20, 2010, the United States filed a Motion for Early Production Pursuant to Rule 17(c)(1) of Documents by Attorney Phillip Scantlebury. (Document No. 233.) The United States recites a statement contained in the 32 page letter which Defendant allegedly sent to DS in October, 2009, that "by the time you get this – my attorneys in Bluefield will have a copy of this letter. In addition to a manuscript, an outline and some other documentation. All of which is in a sealed envelope with instructions for everything to stay sealed unless certain things were to transpire. Like me having an unseen accident or getting killed or anything that would harm me or I'd end up dead or incapacitated. This is what they say in the movies is a 'little insurance policy.' Know what I mean???" Following up on this statement, FBI Special Agent Schwartz learned that Defendant worked part time as a paralegal for a law firm in which Mr. Scantlebury practiced. Special Agent Schwartz met with Mr. Scantlebury and learned that Defendant had given Mr. Scantlebury a copy of the letter. Special Agent Schwartz also learned that Defendant contacted Mr. Scantlebury when he was arrested in November, 2009, to see if Mr. Scantlebury would represent him in this matter, but Mr. Scantlebury refused and told Defendant not to speak with law enforcement officers. The United States argues that because Mr. Scantlbury refused to represent Defendant in this matter, no attorney/client relationship existed between the two. The United States further asserts that the documents which Defendant gave Mr. Scantlebury did not become privileged simply because Mr. Scantlebury is an attorney and Defendant did not intend that the documents remain confidential

as he set conditions upon which they were to be released. The United States therefore asserts that Mr. Scantlebury "should be subject to the subpoena power of Rule 17(c)(1) the same as any other fact witness and requests that the Court order Mr. Scantlebury to "produce the designated items in the Office of the Clerk of this Court on or before July 30, 2010." The United States attaches a copy of a Subpoena as Exhibit A made out to Mr. Scantlebury requiring him to produce "[a]ny letters addressed to [RS] or [DS] provided by [Defendant], or on his behalf, including a letter mailed on or about October 26, 2009 by [Defendant] and a 'manuscript, an outline, and some other documentation' as referenced in said letter." The United States indicated in its Motion that it withheld serving the Subpoena upon Mr. Scantlebury opting to file and serve its Motion to give Defendant an opportunity to object.

Defendant filed a Response to the United States' Motion on July 26, 2010. (Document No. 243.) Citing the test for determining whether the attorney-client privilege applies as adopted by the Fourth Circuit in United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982), Defendant indicates that he initially requested Mr. Scantlebury's advise on the law prior to his arrest and then requested that Mr. Scantlebury represent him in this matter at the time of his arrest and Mr. Scantlebury advised him to remain silent. Defendant therefore claims that he had an attorney-client relationship with Mr. Scantlebury with respect to these matters and has not waived it. Defendant states that "under the Government's version of the facts, it appears that [Defendant] provided a copy of the letter to Mr. Scantlebury concomitant to his seeking advice as to whether he should speak to law enforcement presumably concerning their interest in arresting [Defendant] for his alleged authorship and sending of the letter. Thus, providing a copy of the letter to Mr. Scantlebury was integral to [Defendant]'s ability to seek relevant advice from Mr. Scantlebury on how to deal with law

7

enforcement." Defendant further asserts that his telling DS in the letter that he was providing documents to his attorney did not waive the privilege.

In United States v. Jones, 696 F.2d 1069, 1072, (4th Cir. 1982), the Fourth Circuit stated that "[t]he burden is on the proponent of the attorney-client privilege to demonstrate its applicability." The Court recited the "classic test for application of the attorney-client privilege" as Defendant states it and then stated as follows (Id.):

> Any disclosure inconsistent with maintaining the confidential nature of the attorney-client relationship waives the attorney-client privilege. Any voluntary disclosure by the client to a third party waives the privilege not only as to the specific communications disclosed, but often as to all other communications relating to the same matter.

"[T]he attorney-client privilege does not protect all aspects of the attorney-client relationship, it protects only confidential communications occurring between the lawyer and his client." Hawkins v. Stables, 148 F.3d 379, 383 - 384 (4th Cir. 1998). "The client is the holder of the attorney-client privilege * * * and can waive it either expressly, or through conduct. This latter type of waiver is referred to as 'implied waiver.' * * * As a general rule, implied waiver occurs when the party claiming the privilege has made any disclosure of the confidential communication to any individual who is not embraced by the privilege. * * * Such a disclosure vitiates the confidentiality that constitutes the essence of the attorney-client privilege. * * * Furthermore, such a disclosure not only waives the privilege as to the specific information revealed, but also waives the privilege as to the subject matter of the disclosure." Hawkins v. Stables, 148 F.3d at 384 fn. 4 (Citations omitted.).

As it does not appear that the United States has served its Subpoena upon Mr. Scantlebury, the undersigned will deny its Motion as premature. The Court has not heard from Mr. Scantlebury on the attorney-client privilege issue. The undersigned finds, however, at this preliminary stage in

the development of the underlying issue that Defendant has not demonstrated the applicability of the attorney-client privilege to the copy of the letter and other documents which he allegedly delivered to Mr. Scantlebury. Defendant allegedly sent DS the 32 page letter in violation of 18 U.S.C. § 2261A(2) on or about October, 26, 2009. (Document No. 123 (Second Superseding Indictment) Count One, ¶ 12.) Defendant was arrested eighteen days later on November 13, 2009. (Document No. 9.) Apparently sometime within that period of time, Defendant delivered a copy of the letter and other documents to Mr. Scantlebury. The United States is asking the Court to require Mr. Scantlebury to produce the copy of the 32 page letter and other documents which Defendant delivered to him at about the same time he allegedly sent the letter to DS. The United States is not seeking information about any discussions which Defendant may have had with Mr. Scantlebury at about the time of his arrest respecting the letter and other documents and Mr. Scantlebury's representation in this matter. Obviously, because Defendant sent the 32 page letter to DS, a third party, and wrote therein that he was delivering a copy of the letter to his "attorneys in Bluefield", the copy of the letter as he delivered it to Mr. Scantlebury is not protected. Clearly, Defendant waived any attorney-client privilege which might have attached to the copy of the letter as he delivered it to Mr. Scantlebury when he sent it to DS and announced that he was giving a copy of it to his attorney. If the manuscript, outline and other documentation mentioned in the letter pertain to the same subject matter, the privilege is waived as to them also. Based upon the information and assertions of the parties, it therefore does not appear at this point that the attorney-client privilege applies to the documents or items which the United States would have Mr. Scantlebury produce.[3]

---

[3] Neither party discusses whether obtaining early production of the documents or items from Mr. Scantlebury by Rule 17(c)(1) Subpoena is appropriate. The undersigned finds that it is as it allows for full consideration of the underlying issue, the applicability of the attorney-client privilege,

The United States may serve its Subpoena upon Mr. Scantlebury if it wishes, and Defendant and Mr. Scantlebury may move to modify or quash it as Rule 17(c)(2) provides.

It is therefore hereby **ORDERED** that Defendant's Motion to Compel (Document No. 171.) is **DENIED**. Defendant's Motion to Compel DS's and RS's Telephone Numbers in 2002/2003 (Document No. 229.) is **DENIED as moot**, and the United States' Motion for Early Production Pursuant to Rule 17(c)(1) of Documents by Attorney Phillip Scantlebury (Document No. 233.) is **DENIED as premature**.

The Clerk is directed to deliver a copy of this Order to counsel of record.

ENTER: July 29, 2010.

R. Clarke VanDervort
United States Magistrate Judge

---

prior to trial and will expedite trial of the matter as the issue is resolved in advance.