IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 1:09-cr-00270 |
| THOMAS CREIGHTON SHRADER, | |
| *Defendant* | |

### VICTIM'S SUPPLEMENTAL RESPONSE TO DEFENDANT'S OBJECTION TO THE MAGISTRATE COURT'S ORDER QUASHING SUBPOENA

COMES NOW, crime victim DS, by and through her attorneys Rob Bastress, Esq., and Russell P. Butler, Esq. of the Maryland Crime Victims' Resource Center, Inc., and hereby supplements her response to Defendant's Objection (Document 244) to the Magistrate's Order, dated July 20, 2010, quashing the subpoena issued to Village Counseling Services ("VCS"), and Defendant's Reply to Victim's Response to the same (Document 259).

DS reaffirms all arguments and authorities set forth in DS's Objection and Motion to Quash the VCS Subpoena (Document 162), DS's Reply (Document 227) to the Defendant's Response to DS's Objection and Motion to Quash the VCS Subpoena, and

1

DS's Response to Defendant's Objection to the Magistrate Court's Order Quashing Subpoena. (Document 257).

Defendant's reply (Document 259), for the first time requests this Court review the VCS record *in camera* as an alternative to quashing the subpoena. As this argument was not previously raised in Defendant's Objection, or in the proceedings before the Magistrate Judge, DS hereby supplements her response to the Defendant's Objection to the Magistrate Court's order.

### I. Defendant drastically misstates the Supreme Court's holding in *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987).

Defendant contends that "*Ritchie* may be relied upon by this Court to set aside the Magistrate Court's Order to Quash Subpoena and order that VCS produce records for an *in camera* review by the Court to decide whether there is evidence in the records 'that is both favorable to the accused and material to guilt or punishment'". Document 259, 2; *citing Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987).

The portion of the *Ritchie* holding cited by Defendant is fundamentally inapplicable in the current context for two incredibly important, absolutely critical differences: (1) the materials in *Ritchie* were confidential - not privileged; and (2) the materials in *Ritchie* were within the possession and control of the prosecution, thus giving rise to a Fourteenth Amendment Due Process analysis in the vein of *Brady v. Maryland*, 373 U.S. 83 (1963).

2

1. *Ritchie* only permits an *in camera* review of protected confidential information and, by its own language, does not apply to protected materials wholly insulated from disclosure.

In *Ritchie*, the statute protecting the disputed materials from disclosure made those materials confidential, not privileged. Confidential materials may be disclosed under certain special circumstances, and because confidential materials may be conditionally disclosed, the Supreme Court of the United States determined that the trial could inspect the materials, *in camera*, for information "material[1]" to the defendant's case. *Ritchie*, 480 U.S. at 57-58. The *Ritchie* Court explained its reasoning:

> This is not a case where a state statute grants CYS [2] the absolute authority to shield its files from all eyes… Rather, Pennsylvania law provides that the information **shall be disclosed in certain circumstances**, including when CYS is directed to do so by court order… **Given that the Pennsylvania Legislature contemplated *some* use of CYS records in judicial proceedings**, we cannot conclude that the statute prevents all disclosure in criminal prosecutions

*Id.* at 58. (emphasis added).

As footnote, the *Ritchie* Court made sure to distinguish this holding from other fact-patterns where the disputed materials might be wholly protected: "We express no opinion on whether the result in this case would have been different if the statute had protected the CYS files from disclosure to *anyone,* including law-enforcement and judicial proceedings." *Id.* Fn 14.

---

[1] The word "material" in this holding relates to the use of the word within the context of *Brady*. As described in detail, *infra*, the *Ritchie* Court's holding that an *in camera* review was derived from a *Brady*-style Fourteenth Amendment Due Process analysis that is wholly inapplicable here.

[2] CYS is an acronym for "Children and Youth Services."

Therefore, this aspect of the *Ritchie* holding is fundamentally inapplicable in the current context. In *Ritchie*, the CYS materials were held by a government agency "established by Pennsylvania to investigate cases of suspected child mistreatment and neglect." *Id.* at 39. The CYS materials were available to law-enforcement and the materials were intended to be used in judicial proceedings under certain circumstances.

Privileged materials, on the other hand, are not subject to disclosure under similar circumstances or subject to an in *camera* review. As plainly stated in *Jaffe v. Redmond*, 518 U.S. 1 (1996), which was held nearly ten years after *Ritchie*, the Supreme Court of the United States has specifically, explicitly, and expressly rejected a "balancing component" to the therapist-patient privilege. *Jaffe* described the rejected "balancing component" as a process where a trial judge determines whether the privileged materials will be disclosed by weighing "the relative importance of the patient's interest in privacy and the evidentiary need for disclosure." Jaffe, 518 U.S. at 17.

Thus, even if the portion of the *Ritchie* holding cited by Defendant was not explicitly inapplicable in regards to privileged materials, the later *Jaffe* holding expressly rejected the *in camera* review approach espoused in *Ritchie*. In other words, any door that *Ritchie* might have left open concerning the disclosure of privileged materials was subsequently, and conclusively, closed by *Jaffe*.

2. A *Brady*-style Fourteenth Amendment analysis is inappropriate in the current context.

In *Ritchie*, before the Supreme Court addressed the merits of the parties' arguments, the Supreme Court embarked on a lengthy discussion describing the basis of

4

its analysis. It is in this first half of the *Ritchie* holding that the Supreme Court rejected Ritchie's Confrontation Clause and Compulsory Process arguments. *Ritchie*, 480 U.S. at 51-57. To the former, the *Ritchie* Court held that "the Confrontation Clause was not violated by the withholding of the CYS file... *Id.* at 54. Regarding the latter, the *Ritchie* Court held "[t]his Court has never squarely held that the Compulsory Process Clause guarantees the right to discover the *identity* of witnesses, or to require the government to produce exculpatory evidence." *Id.* at 56.

After rejecting the *Ritchie*-defendant's Sixth Amendment claims, the *Ritchie* Court then explained its analysis on the merits would be conducted under the Fourteenth Amendment: "[i]nstead, the Court traditionally has evaluated claims such as those raised by Ritchie under the broader protections of the Due Process Clause of the Fourteenth Amendment." *Id.* at 56. The Supreme Court cited, *inter alia, Brady v. Maryland* in support of it's holding that the kinds of claims advanced by the *Ritchie*-defendant are properly addressed under the Fourteenth Amendment.

This difference is absolutely critical to the current discussion regarding DS's privileged counseling records. When the *Ritchie* Court held that an *in camera* review might be appropriate to determine whether the CYS records contained information "material" to the defendant, the Supreme Court based its analysis on the legal principles and definitions espoused in *Brady*. This is evident from the *Ritchie* Court's recurring reference to *Brady,* for example:

> It is well settled that the government has the obligation to turn over evidence in its possession that is both favorable to the accused and material to guilt or

> punishment. United States v. Argus, 427 U.S. 97 (1976); Brady v. Maryland, supra, 373 U.S., at 87.
>
> …
>
> In the typical case where a defendant makes only a general request for exculpatory material under Brady v. Maryland, 373 U.S. 83, it is the State that decides which information must be disclosed. Unless the defense counsel becomes aware that other exculpatory evidence was withheld… the prosecutor's decision on disclosure is final. Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance.

*Ritchie*, at 57-60 (internal duplicative citations omitted).

This distinction is critical because the Defendant has muddled the applicable Sixth Amendment analysis portion of *Ritchie* with the inapplicable *Brady* analysis portion. To illustrate, Defendant cites *Ritchie* for the proposition that "the duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress…"; Defendant also cites *Ritchie* for the proposition that an *in camera* review of DS's records is appropriate to find evidence "that is both favorable to the accused and material to guilt or punishment."

Defendant's citations, however, do not reflect the context in which the *Ritchie* Court made these determinations. The "duty to disclose" that is "ongoing" refers to the **prosecution's duty** to disclose exculpatory evidence within the control or possession of **the prosecution** and **its agents** – under *Brady*. Even more so, the specific language that Defendant quotes referring to evidence "that is both favorable to the accused and material to guilt or punishment", is the specific verbiage that the *Ritchie* Court quoted from *Brady* when restating the principal holding of *Brady* – which, repeated with emphasis, was:

> It is well settled that the **government** has the obligation to turn over evidence in its **possession** that is both **favorable to the accused and material to guilt or**

6

**punishment**. United States v. Argus, 427 U.S. 97 (1976); Brady v. Maryland, supra, 373 U.S., at 87.

*Ritchie*, at 57. (emphasis added).

As discussed in DS's initial response (Document 257), the entirety of the analysis discussed in *Brady* – or any subsequent holdings based on *Brady* – is wholly inapplicable in the current context. The simple and undisputable facts are, that unlike the CYS agency in *Ritchie*, VCS is not affiliated or in any way related to the prosecution in this case; the Government is not in possession of the VCS records; the Government has never been in possession of the VCS records; the Government has never seen the VCS records; and no other entity or agency attributable to the Government is or has been in possession of the VCS records: a *Brady*-based, Fourteenth Amendment Due Process Clause analysis is simply inapplicable.

## II. The therapist-patient privilege espoused in *Jaffe* is enforceable in a criminal case.

Although this proceeding is a criminal case and the Supreme Court opinion in *Jaffe* originated from a civil case, the nature and functioning of evidentiary privileges are the same regardless of their context. For instance, communications made to an attorney in the course of representation are just as privileged and protected from disclosure in a civil case as they are in a criminal case.

The explanation for this embodies the very reason why such privileges are recognized by law in the first place: to protect and foster the confidentiality of special and essential relationships which require confidentiality in order to function. The *Jaffe* Court

found the therapist-patient relationship to be of such importance and likewise held that the functioning of the therapist-patient relationship could not exist without an absolute promise of confidentiality between the participants; *Jaffe* held:

> Because state legislatures are **fully aware of the need to protect the integrity of the factfinding functions of their courts**, the existence of a consensus among the States indicates that 'reason and experience' **support recognition** of the privilege. In addition, given the **importance of the patient's understanding** that her **communications with her therapist will not be publically disclosed**, any State's **promise of confidentiality would have little value if the patient were aware that the privilege would not be honored in federal court**. Denial of the federal privilege therefore would frustrate the purpose of the state legislation that was enacted to foster these confidential communications.

*Jaffe*, at 13. (emphasis added).

The Supreme Court's discussion in *Jaffe* states, with indisputable clarity, that the context in which privileged information may be disclosed is immaterial, the mere possibility that the privilege could not be honored defeats the purpose for which it exists.

The chilling effect on the therapist-patient relationship resulting from forcible disclosure is precisely as severe regardless of whether the forced disclosure occurs in a criminal trial as opposed to a civil proceeding. The devastation would be the same as to any privilege, be it attorney-client, spousal, priest-penitent, or therapist-patient as recognized by the federal court. A privilege is a privilege or it is not a privilege. The designation of a criminal case or a civil case does not change the scope or effect of a privilege. Thus the "difference" of the legal proceeding in which a person's personal and private communications with their attorney/spouse/priest/therapist are forcibly disclosed is of no consequence to exposed person. The mere prospect that any of the

8

above confidants could be forced to disclose the private communications is the prime variable impacting upon the effectiveness of protected relationship.

Interpreting *Jaffe* to mean that a therapist-patient privilege exists in a civil case, but not in a criminal case, would completely disregard the painstakingly detailed analysis the Supreme Court undertook when explaining its decision to recognize the therapist-patient privilege. Such an interpretation would not only contravene the entire-stated-purpose of establishing the privilege in the first place, it would stand the concept of an evidentiary privilege on its head.

### IV. Conclusion

WHEREFORE, DS respectfully requests this Court to overrule Defendant's Objection to the Magistrate Court's Order Quashing the VCS Subpoena.

Respectfully submitted this 4th day of August, 2010.

Rob Bastress, Esq.
604 Virginia Street, East
Charleston, WV 25301

_____
Russell P. Butler, Esq.
Maryland Crime Victims' Resource Center, Inc.
1001 Prince George's Blvd., Suite 750
Upper Marlboro, MD 20774-7427
(301) 952-0063
Fax: (240) 929-0526

*Counsel for Crime Victim DS*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of August 2010, a copy of the foregoing Supplemental Response to Defendant's Objection to Order Quashing Subpoena was filed electronically to be served upon:

Christian M. Capece, Esq.
George H. Lancaster, Jr., Esq.
Federal Public Defenders Office, Rm# 3400
300 Virginia Street, East
Charleston, WV 25301
*Counsel for Defendant*

Thomas C. Ryan, Esq.
U.S. Attorney's Office
P.O. Box 1713
Charleston, WV 25326
*Counsel for the United States of America*

/s/ Rob Bastress
Rob Bastress, Esq.
604 Virginia Street, East
Charleston, WV 25301

*Counsel for Crime Victim DS*