IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BLUEFIELD DIVISION

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                         CRIMINAL ACTION NO. 1:09-cr-00270

THOMAS CREIGHTON SHRADER,

               Defendant.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendant's Objection to Order Quashing Rule 17(c) Subpoena [Docket 244]. The Court has also reviewed Victim's Response to Defendant's Objection [Docket 256]; Defendant's Reply to Victim's Response [Docket 259]; and Victim's Supplemental Response [Docket 263]. After careful consideration, the Court affirms the July 20, 2010, Memorandum Opinion and Order [Docket 234] of United States Magistrate Judge R. Clarke VanDervort, and accordingly denies Defendant's objections and orders the Court's Subpoena dated June 4, 2010, quashed.

*I. BACKGROUND AND PROCEDURAL POSTURE*

The factual background of this case dates back to the 1970s. Defendant is a former boyfriend of the alleged victim in this case, "DS." In 1975, after DS ended her relationship with Defendant, Defendant murdered the mother of DS and a man that Defendant apparently believed DS was dating. Defendant was convicted of first degree murder and unlawful wounding in 1976. During his incarceration and afterwards, the Second Superseding Indictment alleges that Defendant continued

to contact and harass DS and her family over the ensuing decades. The instant case was initiated when Defendant allegedly sent a thirty-two page letter to DS in the autumn of 2009.[1]  Defendant currently faces two counts of stalking by use of interstate facility, in violation of 18 U.S.C. § 2261A(2).  On July 14, 2010, Defendant was separately convicted of felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The instant subpoena, motions, and objections arise out Defendant's interpretation of 18 U.S.C. § 2261A(2) ("Section 2261A(2)").  That provision states that:

> [w]hoever–
> ***
> (2) with the intent--
> > (A) to kill, injure, harass, or place under surveillance with intent to kill, injure, harass, or intimidate, or cause substantial emotional distress to a person in another State or tribal jurisdiction or within the special maritime and territorial jurisdiction of the United States; or
> >
> > (B) to place a person in another State or tribal jurisdiction, or within the special maritime and territorial jurisdiction of the United States, in reasonable fear of the death of, or serious bodily injury to--
> > > (I) that person;
> > > (ii) a member of the immediate family . . . of that person; or
> > > (iii) a spouse or intimate partner of that person;
> >
> > uses . . . any facility of interstate or foreign commerce to engage in a course of conduct that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to, any of the persons described in clauses (I) through (iii) of subparagraph (B);
>
> shall be punished as provided in section 2261(b) of this title.

---

[1]  The specific allegations in this case have been adequately discussed elsewhere in the docket.  *See generally* the Court's memorandum opinions of February 8, 2010 (Docket 42; 2010 U.S. Dist. Lexis 10820 and 2010 Westlaw 503092) and July 1, 2010 (Docket 176; 2010 U.S. Dist. Lexis 65806 and 2010 Westlaw 2671497).

On June 4, 2010, Defendant filed an *ex parte* Motion for Issuance of Rule 17(c) Subpoena (Docket 117).  In this motion, Defendant requested that a subpoena be issued compelling Village Counseling Services ("VCS") in Houston, Texas, to produce records in its possession relating to the psychological and emotional conditions and treatment of DS and "RS".  RS is the husband of DS and is named as a victim in Count Two of the Second Superseding Indictment.  Defendant argued that the records were relevant to Section 2261A(2) inasmuch as that provision requires  the United States to prove that Defendant's course of conduct caused DS and RS to experience substantial emotional distress.  The subpoena was issued by the Clerk of the Court on June 16, 2010.  However, while the Court left the subpoena in full force, the subpoena's requirement that VCS produce the requested documents was vacated pending litigation over the  validity of the subpoena.

Preliminary litigation over the subpoena occurred before Magistrate Judge VanDervort.  In her Objection to Issuance of Subpoena, or Alternatively, Motion to Quash Subpoena and Request for Hearing (Docket 162), DS argued that the records sought by Defendant were privileged, *Jaffee v. Redmond*, 518 U.S. 1 (1996) and, to the extent that they are not privileged, that Defendant's subpoena is an impermissible fishing expedition.  In response [Docket 181], and contested by DS in her subsequent reply [Docket 226], Defendant  argued that the Court can compel VCS to produce DS's counseling records with the assurance that  Defendant's counsel would use the records for trial preparation, and that a protective order would assure DS that her records would only be used for that purpose.  Defendant also argued that  Defendant's rights under the Sixth Amendment override DS's psychotherapist-patient privilege, and that DS waived the psychotherapist-patient privilege by assisting the United States in its prosecution of Defendant and by discussing her mental and emotional condition and treatment with investigating agents.  Defendant further argued that the

3

United States must prove that Defendant's conduct caused DS to experience substantial emotional distress and that "[t]he mere testimony of DS and RS that they suffered substantial emotional distress, without any evidence of mental health treatment and counseling, is not enough to prove that they suffered *substantial* emotional distress, as required by the statute." (Docket 181 at 6-7) (emphasis in original).

In his Memorandum Opinion and Order of July 20, 2010, Magistrate Judge VanDervort ordered that the motions to quash of DS and the United States be granted. In ordering the subpoena quashed, Magistrate Judge VanDervort first found that Section 2261(2) provides that the United States may obtain a conviction when a defendant's course of conduct causes substantial emotional distress, and when the course of conduct places a person in reasonable fear of death or serious bodily injury to themselves, immediate family member, spouse, or intimate partner. He then concluded that the use of the word "reasonable" in the statute's language regarding [a course of conduct] ". . . that causes substantial emotional distress to that person or places that person in reasonable fear of the death of, or serious bodily injury to [certain individuals]

> is an indication that Congress intended that a jury would decide whether the victim experienced substantial emotional distress or fear of death or bodily injury from the testimony of an alleged victim and/or others about a defendant's course of conduct and the victim's response(s) or reaction(s) to it. Nothing suggests that evidence that an alleged victim went for psychological counseling or the victim's psychological or counseling records must be introduced in proof of substantial emotional distress or fear of death or serious bodily injury. Indeed, evidence that an alleged victim sought psychological counseling may be completely lacking and circumstantial evidence alone may support such a finding."

(Docket 234 at 9-10). Magistrate Judge VanDervort concluded that Defendant's subpoena is impermissible discovery, and that Defendant is not hampered in trial preparation without the records. As Defendant has been notified that DS sought and received counseling, Magistrate Judge

VanDervort found that Defendant has sufficient information for cross-examination, and that he is not requesting the records for impeachment purposes.

Pursuant to Fed. R. Crim. P. 59(a) and 28 U.S.C. § 636(b)(1)(A), Defendant timely filed objections to Magistrate Judge VanDervort's ruling. This issue is now ripe for review.

## II. ARGUMENT

Defendant makes multiple arguments in his objection to Magistrate Judge VanDervort's Memorandum Opinion of July 20, 2010. First, Defendant argues that the word "reasonable" as it appears in Section 2261(A)(2) only applies to the fear of serious bodily injury or death. According to Defendant, it does not modify the phrase substantial emotional distress. He argues that Magistrate Judge VanDervort's finding impermissibly substitutes a reasonable person test and eliminates the United States' burden to prove beyond a reasonable doubt through relevant medical records that DS and RS suffered substantial emotional distress. According to Defendant, Congress only intended the term "reasonable" to apply to "fear of the death of, or serious bodily injury to . . . ." He states that when the statute was amended in 2006, the phrase "caused substantial emotional distress" was not placed after "reasonable," and argues that this demonstrates that Congress did not intend for "reasonable" to modify "caused substantial emotional distress."

Defendant further argues that, as the United States has disclosed that DS sought counseling due to Defendant's alleged conduct, he has a right under the Sixth Amendment, *Brady v. Maryland,* 373 U.S. 83, 87 (1963) (holding that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution"), and *Giglio v. United States*, 405 U.S. 150, 153-54 (1972) (adding impeachment evidence to the scope of *Brady* materials)

to examine the records of DS in order to test her credibility and to determine whether the records contain exculpatory evidence.  He further states that the records are relevant to his ability to adequately cross-examine and impeach DS at trial, and that his rights under the Sixth Amendment outweigh the psychotherapist-patient privilege.  In support of this, Defendant presents a hypothetical where surveillance video of a burglary reveals that the burglar does not look like the defendant.  Under such a hypothetical, Defendant argues that this video would be discoverable because it could be used to cross examine and impeach the victim and would be *Brady* and *Giglio* material.  Moreover, Defendant states that his subpoena is not a fishing expedition, as DS and the United States have already disclosed what the records purportedly contain, and that the subpoena is the only way to test her credibility.  Finally, Defendant argues that his confrontation rights under the Sixth Amendment satisfy the requirements of *United States v. Caro*, 597 F.3d 608 (4th Cir. 2010), which provides the standard for determining whether Fed. R. Crim. P. 17(c) subpoenas are unreasonable or oppressive.  Pursuant to the requirements of *Caro*, Defendant argues that the records from VCS are evidentiary and relevant, as the testimonies of DS and RS alone are not sufficient, *see Price v. City of Charlotte, NC*, 93. F.3d 1247, 1251-52 (4th Cir. 1996) (stating that, in the context of civil claims for emotional distress, "while a plaintiff's testimony, standing alone, can support an award of compensatory damages, the evidence of the emotional distress must be demonstrable, genuine, and adequately explained"), that the VCS records are not otherwise procurable in advance of trial by exercise of due diligence, that counsel cannot properly prepare for trial without the ability to inspect the VCS records, as without the records there is no way to determine whether the testimony of DS is truthful and, finally, that the subpoena request was made in good faith and is not a fishing expedition.

Through her counsel, DS disagrees with Defendant's contentions.  First, DS argues that Defendant "fundamentally" misapplies *Brady* and/or misstates the facts of this case.  DS argues that *Brady* is inapplicable since VCS is not a government agent and the United States is not in possession of the VCS records sought by Defendant.  Further, DS argues that, contrary to Defendant's assertions, Magistrate Judge VanDervort correctly interpreted Section 2261A(2).  DS argues that Magistrate Judge VanDervort referenced the word "reasonable" to demonstrate that "reasonable" "denotes a second, disjunctive and criminalized cause-effect relationship between Defendant's conduct and its affect on the victim," (Docket 256 at 4), and that Section 2261A(2) contains no requirement that the *actus reas* can only be established through medical records.  Even if Section 2261A(1) requires the United States to prove that DS suffered substantial emotional distress, DS cites *Tanner v. Rite Aid of West Virginia, Inc.*, 194 W. Va. 643, 655 (1995), a civil case, to argue that the United States is not required to establish this element through medical or counseling records.  In *Tanner*, the Supreme Court of Appeals of West Virginia stated, in part, that "often the flagrancy and enormity of the defendant's misconduct adds especial weight to the plaintiff's claim, and is in itself an important guarantee that the mental disturbance which follows is serious and not feigned." *Tanner*, 194 W. Va. at 655 (internal citations and quotations omitted).  Citing this language, DS argues that, given the past and alleged conduct of Defendant, a judge or jury could certainly conclude beyond a reasonable doubt that Defendant caused DS and RS to suffer substantial emotional distress.  Next, DS argues that Defendant's confrontation rights under the Sixth Amendment is only a trial right, and does not include the power to compel pretrial disclosure of information that could possibly be useful at contradicting the testimony of a witness. *Pennsylvania v. Ritchie*, 480 U.S. 39, 52-53 (1987).  Moreover, DS reiterates that the records from VCS are

7

privileged, confidential, and not subject to a balancing test under *Jaffe*. She states that Defendant's hypothetical is inapplicable, as it focuses upon a non-privileged video recording, and that a more applicable scenario would be a criminal defendant's attempt to subpoena attorney-client privileged records or notes from the counsel of a co-defendant who has turned states's evidence. Finally, DS argues that Defendant's rights under the Sixth Amendment do not meet the requirements of *Caro* for Rule 17(c) subpoenas. In addition to reiterating arguments that she has made elsewhere, DS argues that the subpoena is, in fact, a fishing expedition. She argues that neither the parties, the Court, nor her counsel have seen the records from VCS, and that, therefore, Defendant's subpoena is merely an effort to find something for trial. She further argues that Defendant is not unfairly prejudiced, as the United States cannot access or use the records either.[2]

## III. APPLICABLE LAW

A. *The Sixth Amendment and the Psychotherapist-Patient Privilege*

The Sixth Amendment provides, in relevant part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him [and to] have compulsory process for obtaining witnesses in his favor." U.S. Const. Amend. VI.

With respect to evidentiary privileges, "the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," except as

---

[2] In Defendant's Reply to Victim's Response [Docket 259], to which DS responded in her Victim's Supplemental Response [Docket 263], Defendant relies upon the use of *Ritchie* by DS to argue that this Court could also review the VCS records *in camera*. However, the Court declines to address this argument of Defendant, as Defendant's Reply to Victim's Response to Defendant's Objection to Order Quashing Rule 17(c) Subpoena is a tardy venue for Defendant to suggest *in camera* review for the first time.

otherwise provided.  Federal Rule of Evidence 501.  In *Jaffee*, the Supreme Court created a federal psychotherapist-patient privilege that covers confidential communications made to licensed psychiatrists, psychologists, and social workers.  *Jaffee*, 518 U.S. at 15-16.  The court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *Id.* at 15.  The court concurred with "the judgment of the state legislatures and the Advisory Committee that a psychotherapist-patient privilege will serve a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Id.*  It determined that the "psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem," and that "[t]he mental health of our citizenry, no less than its physical health, is a public good of transcendent importance." *Id.* at 11.  Further, the court rejected the possibility that the psychotherapist-patient privilege contains a balancing test.  It stated that

> [m]aking the promise of confidentiality contingent upon a trial judge's later evaluation of the relative importance of the patient's interest in privacy and the evidentiary need for disclosure would eviscerate the effectiveness of the privilege. As we explained in *Upjohn*, [499 U.S. 383, 393 (1981)] if the purpose of the privilege is to be served, the participants in the confidential conversation "must be able to predict with some degree of certainty whether particular discussions will be protected.  An uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all.

*Id.* at 17-18.

Courts have differed as to whether, and which, statutory or evidentiary privileges can be subordinate to rights under the Sixth Amendment.  In *Ritchie*, a criminal case predating *Jaffee*, the defendant had been convicted on various counts related to his molestation of his daughter.  Prior to his trial, the defendant subpoenaed Children and Youth Services ("CYS"), a protective service

agency established by Pennsylvania to investigate cases of suspected child mistreatment and neglect, for certain records relevant to his case. He argued that the records might contain the names of favorable witnesses and other, unspecified, exculpatory evidence. CYS refused to comply with the subpoena, stating that the records were privileged under a state law which provided that all CYS records were confidential, with specified exception. One of the exceptions was that CYS may disclose reports to a court of competent jurisdiction pursuant to a court order. The Supreme Court made two findings applicable to the instant case. First, describing the VCS records as being in the government's possession, the court held that since the legislature contemplated some use of CYS records in court, there was no reason to believe that relevant information could not be disclosed when the appropriate court determined that the information was "material" to the defendant's defense. Therefore, it held that the defendant was entitled to have the CYS file reviewed by the trial court to determine whether it contained information that could have changed the outcome of his trial. *Ritchie*, 480 U.S. at 57-58. However, the court further held that the defendant's right to discover exculpatory evidence did not go so far as to include the unsupervised authority to search Pennsylvania's files and determine the materiality of the information. The court stated that the Pennsylvania Supreme Court had incorrectly interpreted *Davis v. Alaska*, 515 U.S. 308 (1974), "to mean that a statutory privilege cannot be maintained when a defendant asserts a need, prior to trial, for the protected information that might be used at trial to impeach or otherwise undermine a witness' testimony." *Id.* at 52. The court disagreed, stating that

> the right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination . . . . The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses .

> . . . In short, the Confrontation Clause only guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.

*Id.* at 52-53 (internal citations and quotations omitted; emphasis in original).

Since *Jaffee*, courts have differed on whether the Sixth Amendment can trump the psychotherapist-patient privilege. In *United States. v. Doyle*, 1 F. Supp.2d 1187 (D. Oregon 1996), the defendant argued that his Sixth Amendment right to compulsory process trumped the victim's right to confidentiality. The Government sought an upward sentencing departure due to the victim's extreme psychological injury, and the defendant argued that her psychotherapy records could perhaps dispel her testimony. The court disagreed. It noted that other privileged communications are not subordinate to the Sixth Amendment, and stated that *Jaffee* made clear that balancing tests are inappropriate. Moreover, the court declined to conduct an in camera review of the records, noting that "[t]he court's review of the files would itself be a breach of the privilege." *Id.* at 1191.[3] Other cases have reached similar results. *See, e.g., Johnson v. Norris*, 537 F.3d 840, 845-47 (8th Cir. 2008) (rejecting an argument made by a state habeas petitioner that his rights under the Confrontation Clause were violated when the trial court denied him access to the psychiatric records of a witness; and also rejecting an argument that production of psychotherapy records not in the government's possession was required under *Brady*); *Newton v. Kemna*, 354 F.3d 776, 79-82 (8th Cir. 2004); *Petersen v. United States*, 352 F. Supp.2d 1016, 1023-24 (D. S.D. 2005) (rejecting an argument that the psychotherapist-patient privilege is secondary to a defendant's rights; made in the context of an ineffective assistance of counsel claim made under 28 U.S.C. § 2255); *United States*

---

[3] The court in *Doyle* also held that the Government's request for upward departure did not waive the privilege, as only the victim could do so, and that the victim's previous statements and prospective testimony at sentencing did not waive the privilege. *Id.* at 1189-90.

*v. Haworth*, 168 F.R.D. 660, 660-62 (D. N.M. 1996) (concluding that the psychotherapy records were privileged after *in camera* review and not subject to discovery, and stating that the defendants "mistakenly equate their confrontation rights with a right to discover information that is clearly privileged.").

However, other courts have reached a contrary conclusion on this issue. *Bassine v. Hill*, 450 F. Supp.2d 1182, 85-86 (D. Oregon 2006) (distinguishing *Jaffee* as a civil case, and holding that the habeas petitioner's rights of confrontation, cross-examination, and due process outweighed the psychotherapist-patient privilege); *United States v. Mazzola*, 217 F.R.D. 84, 88 (D. Mass.2003) (holding that the societal interest in guarding the confidentiality of communications between a therapist and client were outweighed by a criminal defendant's constitutional right to effectively prepare and cross examine a witness); *United States v. Alperin*, 128 F. Supp. 2d 1251, 53 (N.D. Cal. 2001)*; United States v. Hansen*, 955 F. Supp. 1225, 26 (D. Mont. 1997) (finding that the defendant's need for the privileged material  outweighed the interests of the deceased victim and the public in preventing disclosure).

*B. Subpoenas Under Fed. R. Crim. P. 17(c)*

Fed. R. Crim. P. 17(c)(1) states that "[a] subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates.  The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence.  When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them."  However, "the court may quash or modify the subpoena if compliance would be unreasonable or oppressive," Fed. R. Crim. P. 17(c)(2), and "a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court

order.  Before entering the order and unless there are exceptional circumstances, the court must

require giving notice to the victim so that the victim can move to quash or modify the subpoena or

otherwise object."  Fed. R. Crim. P. 17(c)(3).

A subpoena under Rule 17© is unreasonable or oppressive unless the requesting party

demonstrates

> (1) that the documents are evidentiary and relevant [sic]; (2) that they are not
> otherwise procurable reasonably in advance of trial by exercise of due diligence; (3)
> that the party cannot properly prepare for trial without such production and
> inspection in advance of trial and that the failure to obtain such inspection may tend
> unreasonably to delay the trial; and (4) that the application is made in good faith and
> is not intended as a general "fishing expedition."

*Caro*, 597 F.3d at 620 (quoting *United States v. Nixon*, 418 U.S. 683, 699-700 (1974).

"Accordingly, a defendant seeking a Rule 17(c) subpoena "must clear three hurdles: (1) relevancy;

(2) admissibility; (3) specificity."  *Id.*  (citing *Nixon*, 418 U.S. at 700).  The Fourth Circuit has

"emphasized," however, that Rule 17(c) is not a discovery device.  *Id.* (citing *United States v.*

*Fowler*, 932 F.2d 306, 311 (4th Cir. 1991).  "Generally, the need for evidence to impeach witnesses

is insufficient to require its production [under Rule 17(c)] in advance of trial."  *Nixon*, 418 U.S. at

701.

*IV. DISCUSSION*

A. The Sixth Amendment and the Psychotherapist-Patient Privilege

The Court finds that the psychotherapist-patient privilege is not subordinate to the Sixth

Amendment rights of Defendant.  Accordingly, the records sought by Defendant are protected by

the privilege and are unavailable to Defendant.  The *Jaffee* court explicitly foreclosed the possibility

that the privilege contain a balancing test.  Defendant, by arguing that the privilege is secondary to

his rights under the Sixth Amendment, is explicitly and impermissibly asking the Court to balance

13

his rights with that of the privilege.  While the Court notes that *Jaffee* can be distinguished from the instant case due to the fact that the former was a civil action, it finds that the emphatic language used by the *Jaffee* court regarding the fallacy of a balancing test demonstrates that the court intended for the privilege to apply in all circumstances, civil and criminal.  Exceptions to the privilege, even in the Sixth Amendment context, "would," indeed, "eviscerate the effectiveness of the privilege." *Jaffee*, 518 U.S. at 17.  Moreover, the possibility that the psychotherapist-patient privilege is secondary to the Sixth Amendment is directly contrary to other similar privileges.  Any court would make short work of an argument that the attorney-client privilege can be overcome by a criminal defendant's cross-examination needs. The argument that the psychotherapist-patient privilege is only applicable when not inconvenient for a criminal defendant is similarly deficient.

The importance of the psychotherapist-patient privilege is particularly apparent in cases such as the one at bar and other criminal actions under Section 2261A(2).  As noted in *Jaffee*, "[t]he psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem . . . . If the privilege were rejected, confidential conversations between psychotherapists and their patients would surely be chilled, particularly when it is obvious that the circumstances that give rise to the need for treatment will probably result in litigation." *Id.* at 12.  Here, DS has already had her mother and her friend murdered by Defendant, and the Second Superseding Indictment alleges that Defendant has continued to harass her for decades.  While the Court notes the assurances of defense counsel regarding the VCS records, for DS and other alleged stalking victims to have to choose whether to obtain counseling knowing that their alleged stalkers can subpoena the records thereof would be no

choice at all.  This chilling effect is precisely what the Supreme Court foresaw and explicitly rejected in *Jaffee*.

Moreover, an *in camera* review of the records would be similarly inappropriate even if Defendant had timely raised the issue.  *See* note 1, *supra*.  Unlike *Ritchie,* where the Pennsylvania legislature had contemplated some use of CYS records in judicial proceedings, *Jaffee* explicitly forecloses any use of psychotherapist-patient privileged materials in court.  Indeed, in *Ritchie* the Supreme Court "express[ed] no opinion on whether the result in [*Ritchie*] would have been different if the statute had protected the CYS files from disclosure to anyone, including law-enforcement and judicial personnel."  *Ritchie*, 480 U.S. at 58 n.14.  Given that *Ritchie* was a predecessor to *Jaffee*, the latter case can be seen as determining what the result would have been in the former case had the subpoenaed  records been subject to the psychotherapist-patient privilege.  The possibility of *in camera* review under *Ritchie* is also inappropriate in this case because, unlike in *Ritchie*, the VCS records are not in possession of the government or a government agent; *Ritchie*'s *Brady* analysis is inapplicable here.  Moreover, as the *Doyle* court noted, this Court's review of the VCS files would itself be a breach of the privilege, and the Court declines to undertake such a breach.[4]

However, even if the psychotherapist-patient privilege contains a balancing test, Defendant's rights under the Sixth Amendment do not prevail.  Defendant's ability to cross-examine DS does not include the power to require the pretrial disclosure of the VCS records because the records might be useful in contradicting unfavorable testimony.  *Ritchie*, 480 U.S. at 53.  Defendant will have the

---

[4]   The Court also rejects Defendant's earlier arguments that DS has waived the psychotherapist-patient privilege due to her cooperation with law enforcement. She is not required to choose between her privacy and seeking the assistance of law enforcement.  *Doyle*,1 F. Supp.2d at 1189-90.

15

opportunity to confront DS at trial, and that is sufficient under the Confrontation clause. *Id.* (citing *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). *See also Nixon*, 418 U.S. at 701 (stating that the need for impeachment evidence is insufficient to require the production of materials under Rule 17(c) in advance of trial).

*B. Substantial Emotional Distress Under Section 2261A(2)*

The Court finds that Section 2261A(2) does not require that the United States prove that DS and RS suffered substantial emotion distress.  As the text of Section 2261(A)2 states, the *actus reus* requirement of the provision can be met by two alternate means. The United States can obtain a conviction by proving that Defendant engaged in a course of conduct that caused substantial emotional distress to DS and RS, or by proving that Defendant engaged in a course of conduct that placed them in reasonable fear of the death of, or serious bodily injury to, themselves, an immediate family member, or their spouse or intimate partner. The latter option does not require proof of substantial emotional distress on the part of the victim.

Even if Section 2261A(2) required proof of substantial emotional distress on the part of the victim, such distress need not be proven by medical records.  First, as a preliminary matter, the argument that substantial emotional distress must be proven by medical records necessarily presumes that victims of stalking under Section 2261A(2) seek counseling.   Otherwise, if these victims did not seek counseling, convictions under Section 2261A(2) would be impossible and this provision would, therefore, be without effect.   However, the unfortunate truth is that the vast majority of stalking victims do not seek any psychological counseling at all.  *See* Patricia Tjaden and Nancy Thoennes, *Stalking in America: Findings From the National Violence Against Women Survey*, (United States Department of Justice, Washington, D.C.), April 1998, at 11 (finding that,

16

in a survey of stalking victims, "[a]bout a third of the women (30 percent) and a fifth of the men (20 percent) said they sought psychological counseling as a result of their stalking victimization."). The argument that substantial emotional distress can only be proven at trial through medical records is at odds with the reality of what happens with the majority of stalking victims, and therefore leads to an untenable interpretation of Section 2261A(2).

Substantial emotional distress need not be proven through medical records for other reasons as well. While it is the fear of death or serious bodily injury prong of Section 2261A(2) that contains the modifier "reasonable," the fact that the "substantial emotional distress" prong omits this modifier does not mean that medical records are required for proof of the latter. First, nothing in the plain text of Section 2261A(2) requires medical records to prove substantial emotional distress. Moreover, interpreting Section 2261A(2) to require medical records for proof of emotional distress would make the language of the provision redundant. The requirement that the fear of death or serious bodily injury be reasonable insures that such a fear in a victim is not without merit, and the statute's requirement that the emotional distress of a victim be substantial similarly ensures that the emotional distress of a victim meets a minimum quantum. Therefore, requiring medical records for proof of substantial emotional distress is an unnecessary requirement given that the text of the statute already sets a standard—"substantial"—for the emotional distress of a victim.

Finally, Defendant's argument that substantial emotional distress must be proven by medical records is at odds with decisions from other courts. *United States v. Clement*, crim. no. 09-0337-01, 2010 U.S. Dist. Lexis 73985, *5, 2010 Westlaw 1812395, *2 (May 3, 2010 W.D. La.) (testimony of victim and law enforcement officer sufficient to prove emotional distress in a Section 2261A(2) case); *State v. Askham*, 120 Wash. App. 872, 883 (2004) (expert testimony not required to establish

the reasonable person standard for emotional distress); *Snowden v. State*, 677 A.2d 33, 38 (Del. 1996) (same); *State v. McCarthy*, 294 Mont. 270, 276 (1999) (applying reasonable person test for determination of emotional distress or reasonably apprehended bodily injury); *State v. Martin*, 940 S.W.2d 6, 9 (Mo. App. W.D. 1997) (Medical evidence to prove that victim suffered substantial emotional distress unnecessary "when there is substantial credible evidence from other sources to support such a finding."). *See also United States v. Bodkins*, crim. no. 4:04-CR-70083, 2005 U.S. Dist. Lexis 32420, *5, 2005 Westlaw 2179987, *2 (September 9, 2005 W.D. Va.) (regarding the reasonable fear of death or serious bodily injury in a Section 2261A(1) stalking case). The case cited to by Defendant, *Price v. City of Charlotte, NC*, 93. F.3d 1247, 1251-52 (4th Cir. 1996) provides no assistance. *Price* is distinguishable as a civil action involving claims for emotional distress, and, more importantly, in fact allows that a plaintiff's testimony, standing alone, can support an award of compensatory damages for emotional distress if the evidence thereof is demonstrable, genuine, and adequately explained. Even assuming *arguendo* that such a threshold is applicable, there is no reason to believe that DS and RS cannot satisfy it. The Court also finds *Tanner*, 194 W. Va. at 655, persuasive. The background and allegations of this case add special weight to any emotional distress claimed by DS and RS, and are important guarantees that any emotional distress on their part is legitimate.

The Court notes that Defendant has distinguished *Clement* from the instant case because, unlike the victim in *Clement*, DS has disclosed that she sought counseling. However, despite Defendants's claim, *Brady* and *Giglio*, as noted earlier, are inapplicable to the instant case as VCS is not a government agency and the VCS records are not in the possession of the United States. *See*

*Norris*, 537 F.3d at 847.  Accordingly, for all of the above reasons, the Court finds that any substantial emotional distress suffered by DS and RS need not be proved by medical records.

*C. Subpoenas Under Fed. R. Crim. P. 17(c)*

Finally, the Court finds that the subpoena is unreasonable and/or oppressive, and fails the standard set forth in *Caro*.  The records are not evidentiary and relevant because they are not necessary for Defendant to cross examine his accusers.  *Nixon*, 418 U.S. at 701.  Further, the records are not procurable whatsoever.  They are not in the possession of the United States or one of its agents, and their disclosure is barred by the  psychotherapist-patient privilege.  Morever, counsel for Defendant will be able to properly prepare for trial without the VCS records, as his confrontation rights do not require that he examine these records.  *Ritchie*, 480 U.S. at 52-53.  Finally, the Court finds that the subpoena is an impermissible fishing expedition.  Defendant theorizes that there might be exculpatory material in the records; such a theory is not sufficient.  The Court notes Defendant's argument that the purported content of the records is known to all parties, and that, therefore, there is no "fishing" on his part.  However, the only parties to actually know the content of the records are DS and her counselors.  Any other party's belief regarding the records is merely speculation.


*V. CONCLUSION*

For the reasons stated above, the Court **AFFIRMS** the July 20, 2010, Memorandum Opinion and Order [Docket 234] of United States Magistrate Judge R. Clarke VanDervort, **ORDERS**  that Defendant's Objection to Order Quashing Rule 17(c) Subpoena [Docket 244] be **DENIED**, and further **ORDERS** that Court's Subpoena dated June 4, 2010 [Docket 119] be **QUASHED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel and to the United States Attorney.

ENTER:        August 11, 2010

IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA