GOVERNMENT EXHIBIT
11 D
1:09-CR-270

98-PG-78318

5

## § 61-12-8. Certain deaths to be reported to medical examiners; failure to report deaths; investigations and reports; authority of medical examiners to administer oaths, etc.; fees.

When any person shall die in this State from violence, or by apparent suicide, or suddenly when in apparent good health, or when unattended by a physician, or when an inmate of a public institution not hospitalized therein for organic disease, or from some disease which might constitute a threat to public health, or in any suspicious, unusual or unnatural manner, the medical examiner of the county in which such death occurs shall be immediately notified by the physician in attendance, by any law-enforcement officer having knowledge of such death, or by the funeral director, or by any other person present. Any physician or law-enforcement officer, funeral director or embalmer who wilfully fails to comply with this section shall be guilty of a misdemeanor and, upon conviction, shall be fined not less than fifty dollars nor more than five hundred dollars. Upon receipt of such notice, the medical examiner shall take charge of the dead body, make inquiries regarding the cause and manner of death, reduce his findings to writing, and promptly make a full report thereof to the chief medical examiner on forms prescribed for such purpose, retaining one copy of such report for his own office records, and that of the chief medical examiner and should deliver another copy thereof to the prosecuting attorney of such county, and to any attorney of record in any criminal proceedings or civil action wherein the cause of death is an issue. The medical examiner may administer oaths and affirmations, and take affidavits and make examinations as to any matter within the jurisdiction of his office. The medical examiner shall take possession of any objects or articles which, in his opinion, may be useful in establishing the cause of death, and deliver them to the prosecuting attorney of such county. For each investigation under this section, including the making of the required reports, the medical examiner shall receive such fee as may be determined by the commission on postmortem examinations, which fee shall be paid by the State. (1963, c. 38.)

Cross reference. — See notes to § 61-12-10.
In cases of apparent death, where the body is never recovered or found, the local registrar may issue a death certificate based upon a certification of the fact of such death made by the coroner, pursuant to a properly held investigation. Op. Att'y Gen., Dec. 8, 1964.

## § 61-12-9. Permits required for cremation; fee.

It shall be the duty of any person cremating, or causing or requesting the cremation of, the body of any dead person who died in this State, to secure a permit for such cremation from the chief medical examiner, or from the medical examiner of the county wherein such death occurred, and any such person or persons who shall wilfully fail to secure such permit from cremation, upon conviction thereof, shall be fined not less than twenty dollars and not more than five hundred dollars; such permit for cremation shall be acted upon by the

(A)

§ 61-12-10     CRIMES AND THEIR PUNISHMENT

chief medical examiner or the medical examiner as promptly as possible. A fee of five dollars shall be paid to any medical examiner for his issuance of a permit for cremation, such fee to be paid by the person requesting such permit. (1963, c. 38.)

### § 61-12-10. When autopsies made and by whom performed; reports; records of deaths investigated; copies of records and information.

If in the opinion of the chief medical examiner, or of the medical examiner of the county in which the death in question occurred, it is advisable and in the public interest that an autopsy be made, or if an autopsy be requested by either the prosecuting attorney or the judge of the circuit court or other court of record having criminal jurisdiction in such county, such autopsy shall be made by the chief medical examiner, by a member of his staff, or by such competent pathologist as the chief medical examiner shall designate and employ pursuant to the provisions of this article. The chief medical examiner may employ any medical examiner who is a qualified pathologist to make such autopsies, and the fees to be paid hereunder for autopsies hereunder shall be in addition to the fee provided for investigations and made pursuant to section eight [§ 61-12-8] of this article. A full record and report of the findings developed by the autopsy shall be filed with the office of medical examinations by such person making the autopsy.

Within the discretion of the chief medical examiner, or of the person making such autopsy, or if requested by the prosecuting attorney of such county, or of the county where any injury contributing to or causing the death was sustained, a copy of such report of the autopsy shall be furnished such prosecuting attorney.

The office of medical examinations shall keep full, complete, and properly indexed records of all deaths investigated, containing all relevant information concerning the death, and the autopsy report if such be made. Any prosecuting attorney or law-enforcement officer may secure copies of such records or information necessary to him for the performance of his official duties. Copies of such records or information shall be furnished, upon request, to any party to whom the cause of death is a material issue. Any person performing an autopsy pursuant to the authority of this section shall be empowered to keep and retain, for and on behalf of the chief medical examiner, any tissue from the body upon which the autopsy was performed which may be necessary for further study or consideration. (1963, c. 38.)

Blood samples may be taken from a deceased body as a part of authorized autopsy. 51 Op. Att'y Gen. 606 (1965).

And blood samples may be obtained from blood necessarily removed from deceased body as part of embalming process. 51 Op. Att'y Gen. 606 (1965).

Unauthorized removal of blood samples from dead body by hypodermic needle, if not a part of an authorized autopsy, would be a technical, but not serious, violation of the quasi-property rights of the deceased's nearest relatives. 51 Op. Att'y Gen. 606 (1965).

Photographing body of deceased person. — Public officials, undertakers or other persons do not have the right to photograph the body of a deceased person merely in furtherance of curiosity. 51 Op. Att'y Gen. 606 (1965).

(B)

98-PG-78318

IN THE CIRCUIT COURT OF McDOWELL COUNTY, WEST VIRGINIA

THOMAS C. SHRADER,                                                                    Petitioner,

        Vs.          Civil Action No. 78-C-328

STATE OF WEST VIRGINIA,                                          Respondent.

ORDER

On a former day, to-wit, May 10, 1978, the petitioner, Thomas C. Shrader, filed in this Court his Petition in Forma Pauperis for Writ of Mandamus against the State of West Virginia.

The petitioner is presently confined in the West Virginia State Penitentiary serving two sentences of life with mercy on a charge of First Degree Murder. The petitioner alleges that he intends to file a petition seeking post conviction relief and moves the Court for an order directing Stevens Clinic, Welch, West Virginia, St. Albans Psychiatric Hospital, Radford, Virginia, Bluefield Mental Health Center, Bluefield, West Virginia, and Norris Kantor, former counsel for the petitioner, Bluefield, West Virginia, to furnish petitioner free of cost the following documents: the autopsy report on Howard William Adams, Jr. and Geneva Sophia Miller; a copy of all psychiatric reports performed on the petitioner while he was confined in St. Albans Psychiatric Hospital; all medical examinations pertaining to petitioner performed by Drs. Demopoulos and Wayne,

9B-PG-78318

Bluefield Mental Health Center; and all matters of record that Norris Kantor has in his possession pertaining to petitioner's case.

This Court will treat the Petition for Writ of Mandamus as a Motion requesting the above-mentioned documents. The record reveals that the petitioner had retained Norris Kantor for his attorney in defense of certain indictments returned against him and that the examinations performed at St. Albans Psychiatric Hospital and Bluefield Mental Health Center were performed at the request and expense of petitioner and not the Court. These documents are not under the control or subject to the Court's proceeding in this matter, and any request for these documents should be made by the petitioner directly to these institutions inasmuch as he was the party responsible for said examinations.

As to the request the Court order the attorney to furnish the petitioner his files, the Court is of the opinion it has no authority to interfere between the attorney-client relationship, and the petitioner should direct his request directly to the attorney for what papers he needs and desires.

As to the autopsy reports, <u>the prosecuting attorney</u> has furnished to the Court a <u>copy of a coroner's report, which is being enclosed, on Howard William Adams, Jr. and a copy of the death certificate on Geneva Sophia Miller, (which has been obtained from the Clerk of the County Court's Office.)</u> In addition

9B-PG-78318

the prosecuting attorney has furnished to the Court
an X-ray report on the petitioner and a copy of an
on performed on the petitioner by Dr. J. H. Murry in
y jail, which is herein enclosed.
er than the reports enclosed, the Court has no
ion in this proceeding to grant the relief requested
otion. It is thereby denying the same.
is the 24th day of May, 1978.

    ORDER:

        ENTER:

            /s/ Rudolph J. Murensky
                  JUDGE

OPY, ATTEST:
WILSON, CLERK
_____ DEPUTY CLERK

GOV-000070

9B-PG-78318

10

## CERTIFICATE OF DEATH
### COUNTY CLERK'S OFFICE

**STATE OF WEST VIRGINIA,
COUNTY OF McDOWELL**

Browns Creek ............ District

Geneva Sophia Miller
Name in Full

*White, ~~Colored~~ ~~Male~~ Female

July 26, 19 75
Date of Death

Welch, West Virginia
Place of Death

Rife shot wound abdomen with transection of stomach.
Name of Disease or Cause of Death

Age 51 Years ___ Months ___ Days

Housewife
Occupation

*~~Single~~, Married, ~~Widowed~~ ~~Divorced~~

Fanning Funeral Home Records.
Name of person giving Information
*Physicians, Surgeon, Coroner, Undertaker Head of Family, or Friend

August 19, 19 75
Date Returned

* Erase as facts require.

CASTO & HARRIS INC., SPENCER, W. VA. RE-ORDER NO 60183-B

STATE OF WEST VIRGINIA:

COUNTY OF McDOWELL, TO-WIT:

I, A. M. "Tinker" St. CLAIR, Clerk of the County Commission of McDowell County, do hereby certify that the foregoing is a true and correct copy from the records of said office as the same exists therein.

Given under my hand and the seal of said Commission, at Welch, this 23rd day of May 19 78

*A. M. "Tinker" St. Clair* Clerk.

---

*Legally* this was NEVER PROVEN. No medical records to support this. [Read Exhibit "E"] Yes, I caused Geneva's wound. But did the Doctor's cause her death? Look at the guy John Hinkle shot in the head, when he attempted to kill Regan. A very serious head wound and he lived, because of proper medical treatment.

(B)
GOV-000071

§ 6             HOMICIDE             § 6

classes, murder and manslaughter. These two classes and the various degrees of each are discussed in the following sections.

## C. CERTAIN KILLINGS CONSIDERED.

**§ 6. Acceleration of Impending Death.** — Before developing the various classes of felonious homicide, certain killings are worthy of special consideration, in that they give rise to special problems which occur under unusual circumstances.

It is a well established rule of homicide that if, after a mortal wound is inflicted by one person, another independent, responsible agent, in no way connected in causal relation with the first, wrongfully accelerates the death of the injured party, the second person and not the agent first to wound is guilty of the homicide.[10] However, if, after a mortal wound has been inflicted upon a person and, while he is still living, a second injury is inflicted upon him, and he subsequently dies from the effects of both, the first one contributing to the death, the perpetrator of the first injurious act is not exonerated from the charge of homicide by the perpetration of the second. To effect such exoneration the intervening injury must have been the proximate cause of the death.[11]

The above rules apply where the negligence of a responsible agent intervenes to cause the death, as in the case of surgeons, but not if death results from proper surgical or medical aid, for death resulting immediately from that cause is one of the consequences of the previous unlawful act, and does not excuse the one responsible therefor.[12] And the same rules apply when the victim commits suicide.[13]

the deceased. There was also abundant evidence to show that prior thereto when the deceased threw a bottle at the accused an appreciable period of time elapsed between that time and the fatal shot. On the above facts and evidence it was held that the accused used excessive force which resulted in the deceased's death and the accused was therefore guilty of a felonious homicide. The deceased's conduct as shown by the evidence did not justify the taking of his life. Cox v. Com., 186 Va. 798, 44 S.E.2d 363 (1947).

"Negligent Homicide" from Driving Vehicle in Reckless Disregard of Safety of Others. — See § 17C-5-1, W. Va. Code. See also AUTOMOBILES, § 122.

10. State v. Angelina, 73 W. Va. 146, 80 S.E. 141 (1913).

11. State v. Snider, 81 W. Va. 522, 94 S.E. 981 (1918).

The cooperation of other contemporaneous or prior conditions does not relieve the party charged. He who turns the scale is chargeable with the result. In other words, a cause is, in this sense, that condition which determines the final result. It is the preponderating condition. State v. Snider, 81 W. Va. 522, 94 S.E. 981 (1918).

12. Generally. — State v. Angelina, 73 W. Va. 146, 80 S.E. 141 (1913); State v. Snider, 81 W. Va. 522, 94 S.E. 981 (1918).

Where a person intentionally inflicts a wound calculated to destroy life, and death ensues within a year and a day, he will not be relieved from responsibility for his act because of the carelessness or ignorance of his victim, nor be allowed to shield himself behind the doubt which disagreeing doctors may raise as to the treatment proper for the case in question. Clark v. Com., 90 Va. 360, 18 S.E. 440 (1893).

13. Generally. — The rule respecting the intervention of an independent responsible agent has been applied where death resulted immediately from a self-inflicted injury, or from suicide. State v. Angelina, 73 W. Va. 146, 80 S.E. 141 (1913). And an instruction ignoring this rule is erroneous.

Instruction as to Wound Rendering Deceased Mentally Irresponsible. — Where the evidence justifies it, and it is sought to hold the one inflicting the first blow or wound guilty of the homicide because his act resulted in rendering the one on whom his mortal wound had been inflicted irresponsible and to cause him to inflict upon himself another mortal wound, or a wound accelerating his death, the instructions given should be so framed as to present clearly that theory of the case. State v. Angelina, 73 W. Va. 146, 80 S.E. 141 (1913).

(E)

GOV 000072