**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                    **CRIMINAL ACTION NO. 1:09-00270**

**THOMAS CREIGHTON SHRADER**

### SENTENCING MEMORANDUM OF THE UNITED STATES

The United States offers this Sentencing Memorandum outlining its position regarding the pre-sentence investigation report ("PSR").

**I.   OFFENSE AND RELEVANT CONDUCT**

Defendant moved to sever the Indictment then proceeded to trial twice. The first trial was held in Bluefield in July on Count Three, a felon-in-possession charge for violation of 18 U.S.C. § 922(g)(1). The second trial was held in Beckley in September on Counts One and Two, interstate stalking charges, for violations of 18 U.S.C. § 2261A(2). A jury in each case returned guilty verdicts on all three counts. The PSR adequately summarizes the offense and relevant conduct.

Pursuant to United States Sentencing Guideline ("USSG") § 4B1.4 and the Armed Career Criminal Act ("ACCA"), codified at 18 U.S.C. § 924(e)(1), the United States concurs with the PSR that upon his conviction of Count Three, Defendant's USSG offense level

is 33 with a Criminal History Category IV, resulting in an adjusted offense level of 188 to 235 months.[1]

As discussed more fully below, the United States asserts that a sentence of *at least* 213 months is appropriate.  For Count Three alone, Defendant is exposed to at least 180 months as a result of the ACCA (recognizing that the USSG range actually begins at 188 months).  To fully vindicate the interests of the United States and Defendant's victims for the prosecution of Counts One and Two, the Court should include an additional 33 to 41 months in Defendant's sentence.  The resulting recommended sentence, 213 months, falls within the midpoint of Defendant's USSG range.

## II.  CRIMINAL HISTORY

Pursuant to USSG § 4A1.4(c), the United States agrees with the PSR that provides Defendant should be placed in Criminal History Category IV.  To the extent the Court determines the Criminal History Category is less, the United States reserves the right to argue for an upward departure.  See USSG § 4A1.3.

## III.  18 U.S.C. § 3553(a) FACTORS

The factors in Title 18, United States Code, Section 3553(a) counsel for a sentence that is at least 213 months, the midpoint of Defendant's USSG range.

---

[1] The United States intends to be prepared to provide a factual basis at sentencing for the PSR's conclusion the ACCA applies in this case.  The United States intends to rely upon a transcript of DS' trial testimony and, if necessary, supplement the transcript with additional live testimony from DS.

**A. 18 U.S.C. § 3553(a)(1)**: The nature and circumstances of this case warrant a sentence of at least 213 months, which will represent at least fifteen years attributed to Defendant for his conviction on Count Three and an additional 33 months for his conviction of Counts One and Two.

In summary, Defendant's prosecution is a culmination of a lifetime of harassment and intimidation of his high school ex-girlfriend, "DS", and her husband of thirty years, "RS." Defendant murdered DS's mother and friend in cold blood in her presence over thirty years ago.  From prison, Defendant continued to stalk and harass DS through a civil lawsuit and contacting her family. Unable to live peacefully in southern West Virginia, DS and RS felt compelled to move as far away as Texas to escape Defendant's terror.  After not hearing from Defendant for several years, DS and RS made the mistake of letting their guard down and believing that Defendant would finally let them live their lives without the unspoken fear he imbedded in each of them.

Yet, in August 2008, Defendant shattered any hope that DS and RS had for tranquility.  He pierced the sanctity of their home through phone calls.  Then, in October 2009, Defendant sent an unequivocal message to DS and RS in his rambling thirty-two page letter (the "Letter").  DS was either going to answer favorably his delusional demands or he was going to "initiate his next step." Defendant's conduct has done nothing short of terrorizing his

victims. DS and RS deserve an opportunity to enjoy their lives without fear that Defendant will be on their doorstep one day.

The history and characteristics of this Defendant show a man who will never let DS enjoy her life -- ever. Through his most recent Letter, Defendant continues perpetuating feelings he has harbored since he was a teenager: DS is really responsible for the murder. Even though he killed DS's mother (and only real parent as her dad was permanently hospitalized) and friend, Defendant has never apologized for his actions. He has shown no remorse. Instead, Defendant has insisted for over thirty years that DS is to blame. He cultivates feelings of guilt within her every time he injects himself into DS' life. In short, Defendant is a manipulative person with a violent past.

The requested sentence is appropriate in light of the nature and circumstances of the convicted offenses and the history and characteristics of Defendant.

**B. 18 U.S.C. § 3553(a)(2)(A):** The United States asserts that a sentence of at least 213 months is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

As noted above, Defendant's Letter did not only contain subtle threats, but overt statements that would cause any reasonable person to be in fear of her life. Further, Defendant's conduct put DS and RS in danger for not only themselves, but for their

4

children.  The couple has lived with the fear of how and when Defendant would reappear in their lives every moment.  As DS and RS both testified, they both believed that Defendant's "next step" referenced in the Letter involved harming them and their family.

Also, the requested sentence is important to promote respect for the law.  Defendant, a four-time-convicted violent felon, possessed firearms in his home for over fifteen years.  Defendant walked passed those weapons every day and took no steps to remove them from the home.  Every day that he walked passed the firearms and did nothing to remove them from his home demonstrate his clear disregard for the law.

Finally, the requested sentence is important for just punishment for these offenses.  If the sentence does not include a portion attributed to Counts One and Two (i.e., an additional 33 to 41 months over and above what the Court imposes for Count Three), Defendant will not be adequately punished for these two discrete offenses.  Defendant's criminal conduct towards DS and RS needs to be vindicated separately from the just punishment Defendant deserves under the ACCA for Count Three.

       **C.**   **18 U.S.C. § 3553(a)(2)(B)**:  The United States asserts that the requested sentence will serve to deter Defendant from continuing to harass, threaten and intimidate DS, RS and her family.  If for no other reason, Defendant should have realized that DS and RS desired no contact with him after the August 2008

phone calls.  RS spoke calmly to Defendant and tried to give him the "closure" he may have been seeking, but made it clear that RS did not want Defendant to contact his family anymore. Based on his subsequent action, however, it is clear that Defendant will never give DS and RS peace.  After August 2008, Defendant broadened his stalking pattern to include DS's family -- their twenty-six year old daughter and eighteen year old son -- by tracking them down through the Internet.  Then, in October 2009, Defendant sent the Letter.  Through the thirty-two pages of rambling, vulgarity and threats, Defendant's message was clear:  he will never give DS peace and he will continue to try and lay the blame of her mother's murder on her.  Only a sentence of imprisonment of at least 213 months will deter Defendant.

In addition, the United States would request that the Court place a special condition of mail/phone monitoring during imprisonment and while on supervised release to ensure he can no longer reach DS, RS or their extended family.

   D.   **18 U.S.C. § 3553(a)(2)(C)**:  Defendant was convicted of four violent felonies in the late 1970's.  He was released on parole in December 1993 and returned to his home in Duhring, Mercer County, West Virginia.  Notwithstanding these four violent felonies, he kept three firearms in the home that he had purchased before his incarceration.  The firearms were stored in an unlocked dining room cabinet between the kitchen and his bedroom.

According to Defendant's aunt, Elizabeth Jones, those firearms remained in the cabinet the entire sixteen years that Defendant lived at the Duhring residence after his release.  Clearly, Defendant knew the firearms were in his home and that he could not possess him -- evidenced by his attempt to argue that the firearms were actually "owned" by Ms. Jones.

Through his inaction, Defendant has shown a clear disrespect for the law.  The ACCA was clearly intended by Congress to be an enhanced penalty for violent felons who disregard the law and possess firearms.  Congress strongly indicated a desire to protect the public from future crimes of violent felons with severe punishment.  The requested sentence should serve this legitimate purpose.

**E.  18 U.S.C. § 3553(a)(2)(D):**  Defendant has had no real means of employment since his release from prison in 1993.  A sentence consistent within the USSG range will provide him opportunities to receive vocational training while incarcerated.  Further, Defendant clearly needs counseling to address issues surrounding his murder of DS's mother and friend.  Although it has been over thirty years, Defendant still insists that DS was somehow responsible for the murders.  Prisoner counseling will hopefully help Defendant address his past.

**F.  18 U.S.C. § 3553(a)(3):**  As a result of his conviction for Count Three, Defendant faces a statutory  minimum

sentence of fifteen years with a maximum sentence of life imprisonment. The United States asserts that the Court, in addition to applying at least the mandatory minimum sentence under the ACCA, should include an additional 33 to 41 months for his stalking convictions.

The conduct on trial represented different interests. With respect to Count Three, the ACCA vindicates the interest of the United States in keeping firearms out of the hands of violent felons. Convictions for Counts One and Two represent vindication for DS and RS, victims of domestic crimes who have endured a life of torture. The sentence should reflect each interest.

D. **18 U.S.C. § 3553(a)(4)**: Under the USSG, Defendant is categorized as an Armed Career Criminal. Further, by virtue of his conviction of Counts One and Two, Defendant's offense involves interstate stalking. A sentence of at least 213 months adequately reflects Defendant's placement in both categories.

E. **18 U.S.C. § 3553(a)(5)**: The United States asserts that policy statements contained in USSG §§ 5K2.3 and 5K2.8 warrant a sentence that, in addition to what the Court determines is appropriate for Count Three, includes an additional term of imprisonment of 33 to 41 months. As it was clear from their testimony, Defendant's conduct has had a profound impact on the lives of DS and RS. To this day, the couple takes steps to protect their location. They do not use return addresses on Christmas

cards. They do not return to southern West Virginia to visit family. The murder of DS's mother and friend has been a defining point in their lives. Defendant's sentence should take into account the lasting impact he has had on DS and RS.

    **F. 18 U.S.C. § 3553(a)(6):** The United States asserts that the requested sentence is at the midpoint of the advisory USSG range. The requested sentence would avoid sentencing disparities with similarly situated defendants.

    **G. 18 U.S.C. § 3553(a)(7):** Pursuant to USSG § 5E1.1, 18 U.S.C. §§ 2264, 3663A and 3664, DS and RS are entitled to restitution. According to Paragraph 67 of the PSR, Defendant has an interest in a cabin on Clayter Lake in Virginia. The Court should order that, to the extent possible, Defendant's interest in the cabin be liquidated to satisfy restitution. Otherwise, the PSR indicates that, absent prison earnings, Defendant has no means to pay mandatory restitution.

Regardless of his ability to pay, the Court should order restitution to the victims as provided for in the PSR.

## IV. SENTENCING HEARING AND WITNESSES

The United States intends to be prepared to introduce portions of DS's trial testimony to provide a factual basis for the application of the ACCA. If necessary, the United States will also call DS to provide more detail. Additionally, DS and RS have

expressed a desire to address the Court as victims of Defendant's crimes.

Based on the foregoing, the United States anticipates that Defendant's sentencing will last approximately one and a half hours.  The United States reserves the right to supplement its memorandum to respond to any matters raised by Defendant.

WHEREFORE, for the above-cited reasons, the United States asserts that a sentence that is at least the midpoint of Defendant's USSG range is appropriate in this case.

>Respectfully submitted,
>
>R. BOOTH GOODWIN II
>United States Attorney
>
>/s/ *Thomas C. Ryan*
>THOMAS C. RYAN
>Assistant United States Attorney
>WV Bar No. 9883
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax:  304-347-5104
>Email: thomas.ryan@usdoj.gov

CERTIFICATE OF SERVICE

I certify that the "SENTENCING MEMORANDUM OF THE UNITED STATES," has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing today, November 9, 2010, to:

>Christian M. Capece
>Assistant Federal Public Defender
>300 Virginia Street, East, Room 3400
>Charleston, WV  25301

>/s/ *Thomas C. Ryan*
>THOMAS C. RYAN
>Assistant United States Attorney
>WV Bar No. 9883
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax:  304-347-5104
>Email: thomas.ryan@usdoj.gov