**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
BLUEFIELD DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                            **CRIMINAL ACTION NO. 1:09-00270**

**THOMAS CREIGHTON SHRADER**

<u>**SUPPLEMENTAL SENTENCING MEMORANDUM
OF THE UNITED STATES**</u>

  The United States files this Supplemental Sentencing Memorandum to address the applicability of the Armed Career Criminal Act ("ACCA"). The United States agrees with the conclusion set forth in the presentence investigative report ("PSR") that the ACCA does apply. The United States offers this analysis to support its position.

  The ACCA provides, in relevant part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

Further, "violent felony" is defined as

> [A]ny crime punishable by imprisonment for a term exceeding one year . . . that--

>    (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
>    (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .

18 U.S.C. § 924(e)(2)(B).

Defendant has committed four violent felonies. See PSR, ¶¶ 10-12. On January 20, 1976, Defendant pled guilty to two counts of first degree murder for shooting a friend of DS, Rusty Adams, and her mother, Geneva Miller. Id. at ¶ 10. Defendant also pled guilty to one count of malicious wounding for shooting DS's neighbor, Charles Kowaleski, in the arm. Id. at ¶ 11. Defendant pled guilty in March 1977 to jail escape. Id. at ¶ 12.[1]

The issue is whether at least three of Defendant's violent felonies "arose out of a separate and distinct criminal episode," which would trigger the ACCA. United States v. Carr, 592 F.3d 636, 644 (4th Cir. 2010)(citing United States v. Letterlough, 63 F.3d

---

[1] The Fourth Circuit applies a two-step, modified-categorical approach in determining whether an escape qualifies as a "violent felony" under the ACCA. See United States v. Bethea, 603 F.3d 254 (4th Cir. 2010). Under the first step, the Court should find that Defendant's escape qualifies because the statute, W. Va. Code § 61-5-10, encompasses only custodial escapes. See Exhibit A. Further, if the second step is necessary, Defendant's escape must be considered a violent felony on its facts. He was in custody serving a life sentence for two counts of first degree murder. While back in McDowell County for a hearing, he and another inmate escaped from the county jail. Defendant remained on the run for four months until he was caught in Texas. Defendant pled guilty to "jail escape," not failure to report. See Ex. B.

332, 335 (4th Cir. 1995).  To make this determination, the Fourth Circuit considers five factors:

> (1) whether the offenses arose in different geographic locations; (2) whether the nature of each offense was substantively different; (3) whether each offense involved different victims; (4) whether each offense involved different criminal objectives; and (5) whether the defendant had the opportunity after committing the first-in-time offense to make a conscious and knowing decision to engage in the next-in-time offense.

United States v. Carr, 592 F.3d at 644 (citing United States v. Leeson, 453 F.3d 631, 640 (4th Cir. 2006).  Further, the Court "can consider these factors together or independently, and 'if any one of the factors has a strong presence, it can dispositively segregate an extended criminal enterprise into a series of separate and distinct episodes.'"  Id. (quoting Letterlough, 63 F.3d at 336).  Based on these factors, the Court should apply the ACCA to Defendant.

First, all four crimes occurred in different locations. According to the trial testimony of DS, Defendant shot Rusty Adams first in a bedroom adjoining the kitchen.  See Ex.  C at 34:2-18. Next, he entered the living room where he shot Geneva Miller.  Id. Even though both murders happened in DS's house, Defendant's conduct occurred in different rooms and each should be treated as occurring in different locations.  See United States v. Tisdale, 921 F.2d 1095, 1099 (10th Cir. 1990) ("The fact each incident occurred inside one enclosed structure does not alter our conclusion that the crimes were committed at different

locations."). Then, as DS "zigzagged" across the street to the Kowaleskis' house, Defendant kept shooting at DS and struck Charles Kowaleski in the arm. See Ex. D at 35:4-9. Further, Defendant's June 1976 escape clearly occurred at a different location.

Second, the nature of each offense was substantively different. The trial evidence showed that Defendant shot Adams because either he believed Adams was a rival or, contrived later in his life, it was a part of an insurance fraud scam conceived by DS. See Ex. E at 86:16-87:4. Although he has never apologized for her death, Defendant has insisted that Miller's death was DS's fault for running. See Ex. F at 4:22-5:11. Charles Kowaleski's wound appeared to be a result of Defendant trying to kill DS. The escape was for the purpose of avoiding lifetime imprisonment.

Third, if for no other factor, the Court should apply the ACCA because each crime involved a separate and distinct victim. See United States v. Hobbs, 136 F.3d 384 389 (4th Cir. 1998)("the fact that there were multiple victims decisively tips the scales in favor of concluding that each [crime] was a separate and distinct criminal episode."). Rusty Adams, Geneva Miller, Charles Kowaleski and the public, as a result of the escape, unquestionably suffered at Defendant's hands.

Finally, at every turn, Defendant had an opportunity to stop and spare the lives of each victim. DS testified that when he first returned to her house, Defendant began shooting his rifle

4

into the kitchen door to gain access. Ex. C at 34:2-7. Then, he entered the bedroom and shot Rusty Adams - with a rifle - while facing him in the same room. Id. at 34:14-18. He then made the conscious decision to turn his attention to DS and Geneva Miller. He entered the bedroom and began shooting again. Id. at 34:20-24. Not done there, Defendant stepped around a mortally-wounded Geneva Miller and made the conscious decision to continue shooting at DS as she ran across the street for her life. At that point, Defendant struck Charles Kowaleski. Ex. D at 35:4-9. With respect to the escape, Defendant was captured in Dallas, Texas after four months. He did not surrender to authorities.

In conclusion, based on consideration of the Carr factors and giving independent consideration to Defendant's victims, the Court should find that the ACCA applies to Defendant.

Respectfully submitted,

R. BOOTH GOODWIN II
United States Attorney

/s/ *Thomas C. Ryan*
THOMAS C. RYAN
Assistant United States Attorney
WV Bar No. 9883
300 Virginia Street, East, Room 4000
Charleston, WV 25301
Telephone: 304-345-2200
Fax: 304-347-5104
Email: thomas.ryan@usdoj.gov

**CERTIFICATE OF SERVICE**

I certify that the "SUPPLEMENTAL SENTENCING MEMORANDUM OF THE UNITED STATES" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing today, November 15, 2010, to:

>Christian M. Capece
>Christian_Capece@fd.org
>Assistant Federal Public Defender
>300 Virginia Street, East, Room 3400
>Charleston, WV  25301

>/s/ *Thomas C. Ryan*
>THOMAS C. RYAN
>Assistant United States Attorney
>WV Bar No. 9883
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone:  304-345-2200
>Fax:  304-347-5104
>Email: thomas.ryan@usdoj.gov