IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

UNITED STATES OF AMERICA

v.  CRIMINAL NO. 1:09-00270-001

THOMAS CREIGHTON SHRADER

### MEMORANDUM OPINION AND ORDER

On December 10, 2025, a Petition/Request for Modifying the Conditions of Supervision was filed. See ECF No. 617. In that Petition, the Probation Office sought to modify defendant's term of supervised release to include five additional conditions of supervision. See id. After a hearing, on December 17, 2025, the court ordered the additional conditions imposed. The reasons for that decision follow.

After two jury trials in this court, in 2010, defendant was convicted of two counts of stalking via a facility of interstate commerce, in violation of 18 U.S.C. § 2261A(2), and one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).[1] The United States Court of Appeals for the Fourth Circuit summarized defendant's conduct as follows:

> Over the course of more than three decades, Thomas Creighton Shrader harassed and intimidated D.S. and

---

[1] The undersigned was not the judge for defendant's trial but the matter was reassigned when defendant began his term of supervised release.

later her husband R.S., causing them to fear for their safety and that of their children. . . .

Starting sometime around 1973, while still a high school student in McDowell County, West Virginia, D.S. began a relationship with Shrader. Over time he became increasingly demanding and possessive, repeatedly appearing uninvited at D.S.'s house. This led her to break off the relationship in 1975 after approximately two years. When she did so, the defendant threatened to kill D.S.'s two nephews if she did not continue seeing him. Around the same time, the defendant physically assaulted D.S. at her workplace, choking her in an elevator.

On July 16, 1975, the defendant confronted D.S. while she was at home with her mother, Geneva Miller, and a family friend, Rusty Adams. D.S. refused to leave with the defendant. Twenty minutes later, he returned to her home with a high-powered rifle. Entering the house, he shot and killed Rusty Adams in a side room. He next shot Geneva Miller, who died ten days later of gangrene contracted in her wound. D.S. ran out of the house, fleeing across the street to the home of her neighbor, John Kowaleski. Shrader continued shooting and wounded Kowaleski in the arm. The defendant was subdued and arrested, and was charged in West Virginia state court with two counts of first degree murder in violation of W. Va. Code § 61-2-1 and one count of unlawful wounding in violation of W. Va. Code § 61-2-9.

Shrader pled guilty to these charges on January 20, 1976, and was sentenced to concurrent life sentences with a recommendation of mercy on the murder charges as well as an additional year of incarceration for the wounding offense. . . .

During his incarceration, Shrader continued to contact D.S. He sent approximately fifteen to twenty letters to her at the bank where she worked, repeatedly referencing his murder of D.S.'s friend and mother, and causing D.S. to feel severely threatened. In 1978, the defendant filed a lawsuit against D.S. in Mercer County, West Virginia, alleging that D.S. had

2

>    breached a promise to marry him and seeking $700,000 in damages from her.
>
>    By this time, D.S. had married R.S.  In 1979, they moved to Texas, severing all ties with West Virginia, and took a variety of additional precautions to ensure their safety and anonymity.  This did not deter Shrader, who wrote letters to D.S.'s father, mother-in-law, and sister. . . .
>
>    Beginning on August 6, 2008, Shrader made a series of phone calls to the unlisted number of D.S.'s Texas home.  Speaking with D.S., he identified himself and said, "I need to talk to your kids before we die." She denied having children, but Shrader identified them by name.  D.S. called 911, but the local police were unable to help her, even though D.S. made clear that she was living in terror.  The defendant called back at least four times that evening. . . .
>
>                          * * *
>
>    On October 30, 2009, R.S. received a UPS package addressed to his wife at their Texas home.  Inside was a thirty-two page letter from Shrader. . . .  He reiterated his delusion that the murders of Rusty Adams and Geneva Miller were part of a plot hatched by D.S.  "Your plan didn't work and it cost the life of your mother."  He claimed that D.S. had aborted their child, wishing for "God to take one of your children's live's in an accident to show me that you did have an abortion."  Shrader described how he almost killed D.S. in graphic detail. . .  And he warned D.S. about possible physical violence against her. . . .

United States v. Shrader, 675 F.3d 300, 302-04 (4th Cir. 2012).

The stalking charges were based upon the letter received on October 30, 2009, and the firearms charge arose out of a search of defendant's residence wherein three firearms were recovered.  See id. at 304-05.  After he was convicted at trial,

3

Shrader was sentenced to 235 months in prison follow by a five-year term of supervised release.  See id. at 306.  Defendant was released from federal prison and his term of supervised release commenced on October 29, 2025.  After Shrader would not agree to the additional conditions sought by the probation office, the petition was filed and a hearing was scheduled on the petition to modify the conditions of defendant's supervised release.

That hearing was held on December 17, 2025.  Present at the hearing were defendant, Thomas Creighton Shrader, in person and by counsel, Michael R. Whitt; the United States appeared by Brian Parsons, Assistant United States Attorney; and the probation office was represented by Senior United States Probation Officer M. Dylan Shaffer.  Christopher Quasebarth appeared telephonically on behalf of the victim.

The court advised the defendant that, pursuant to Rule 32.1(c) of the Federal Rules of Criminal Procedure, he has the right to a hearing and assistance of counsel before the terms of his supervised release could be modified, given that the modifications sought were not favorable to the defendant.  At the hearing, defendant was given an opportunity to make a statement and present any information in mitigation.

At the hearing, counsel for the government argued that the proposed modifications were necessary and appropriate while

4

defendant opposed the requested modifications--except for the second one listed at subsection (b)--and argued that the proposed modifications were not necessary.

"Supervised release is intended 'to assist individuals in their transition to community life.'"  United States v. Gaskin, 759 F. Supp.3d 633, 639 (D. Md. 2024) (quoting United States v. Johnson, 529 U.S. 53, 59 (2000)).  Pursuant to 18 U.S.C. § 3583(e)(2), after considering the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), the court may "modify, reduce, or enlarge the conditions of supervised release, at any time prior to the expiration or termination of the term of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure . . . provisions applicable to the initial setting of the terms and conditions of post-release supervision."  The factors a court must consider are:

> the circumstances of the crime; the history and characteristics of the defendant; the need for deterrence; protection of the public; provision of education or vocational training, medical care, or other treatment; the kinds of sentence and the sentencing range established by the Sentencing Commission and Congress; the relevant policy statements of the U.S. Sentencing Commission; the need to avoid disparities among defendants with similar records and similar conduct of guilt; and the need to provide restitution to the victim.

United States v. McLeod, 972 F.3d 637, 641 (4th Cir. 2020). Discretionary conditions of supervised release may be ordered so long as they are reasonably related to "the nature and circumstances of the offense, the history and characteristics of the offense, the history and characteristics of the defendant, and the statutory goals of deterrence, protection of the public, and rehabilitation." Gaskin, 759 F. Supp.3d at 640. Such conditions must also "involve 'no greater deprivation of liberty than is reasonably necessary' to achieve those purposes," and accord with any pertinent policy statements issued by the Sentencing Commission. United States v. Castellano, 60 F.4th 217, 225 (4th Cir. 2023) (quoting 18 U.S.C. § 3583(d)).

"A district court may modify the conditions imposed on a term of supervised release at any time before the term has expired, even when the modification is based only on evidence that was available at the original sentencing and not on changed circumstances." United States v. Kelly, 449 F. App'x 293, 295 (4th Cir. Oct. 11, 2011).

The court, after considering the foregoing factors, found that the proposed additional conditions of supervision are necessary to address the seriousness of the defendant's conduct while on supervision and to provide necessary heightened supervision of the defendant. As noted above, defendant did not

contest the requested modification that he have no contact with the victim or her family.  As for condition (a), the mental health assessment and treatment, the court believes that condition should have been imposed at sentencing and is merited based upon the information contained in the presentence report ("PSI"), defendant's criminal history at the time of sentencing on the underlying offense, as well as all evidence before the district judge when defendant was originally sentenced.  However, more recent information, i.e., the two exhibits admitted at the hearing, which were filed under seal, further supports imposition of a mental health evaluation and treatment condition.  The 38-page letter, written in 2024, (Exhibit 1), is disturbing, is similar to other threatening correspondence sent to the victim and her family, and suggests to the court that defendant may have mental health problems.

The search condition outlined at subsection (c) is necessary to protect the public, as well as the probation officers who are supervising him, from further criminal acts of the defendant.  Defendant has a violent history, including two murders, and a history of possession of firearms after felony convictions.  The search condition is reasonably related to the circumstances of Shrader's offense, his history, and the need to afford adequate deterrence and protect the public. Furthermore,

7

given the restrictions on the probation officer's discretion in conducting a search pursuant to the condition, the search condition involves no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release.

The computer use condition found at subsection (d) is likewise necessary to deter criminal conduct by the defendant, protect the public and the victim, and to ensure defendant's compliance with condition (b) regarding contact with the victim and her family. Given defendant's repeated efforts to contact the victim and her family over a period of more than forty years, the computer use condition is reasonably related to his offense as well as his history.

Finally, the drug testing condition is merited given the positive drug screen defendant received while incarcerated. The probation officer needs to determine whether defendant has a substance abuse problem which might serve to exacerbate any possible mental health problems as well as any compulsions defendant has toward the victim. Furthermore, given defendant's violent criminal history the condition is necessary to protect the public and the victim.

For this reason, the court **ORDERED** defendant's term of supervised release **MODIFIED** to include the following additional conditions:

1. The defendant shall participate in a mental health assessment and follow all treatment recommendations as instructed including taking all medications as prescribed. The defendant shall participate in a mental health program until such time as the defendant is released from the treatment services by the mental health professional. The probation officer, in consultation with the treatment provider, will supervise the defendant's participation in the program.

2. The defendant shall have no direct or indirect contact, at any time, for any reason, with [D.S.], the victim identified in the presentence report or the victim's family.

3. The defendant shall submit his person, property, house, residence, vehicle, papers, or office to a search conducted by a United States probation officer when there is a reasonable suspicion that the defendant has violated a condition of supervision. Prior to the search, the Probation Officer must obtain approval for the search from the Court. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation or release. The defendant shall inform other occupants that the premises may be subject to searches pursuant to this condition.

4. The defendant must not possess or use a computer or other device (as defined in 18 U.S.C. § 1030(e)(1)) capable of Internet access until a Computer Use Agreement is developed and approved by the probation officer. Such approval will not be unreasonably withheld. Such computers, computer hardware or software possessed solely by the defendant is subject to searches and/or seizures by the probation office.

5. The suspension of the drug testing condition is removed. The defendant shall submit to random urinalysis or any drug screening method whenever the same deemed appropriate by the probation officer and shall participate in a substance abuse program as directed by the probation officer. The defendant shall not use any method of device to evade a drug screen.

After informing defendant of his right to appeal, the hearing was concluded.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record, the United States Marshal for the Southern District of West Virginia, and the Probation Department of this court.

**IT IS SO ORDERED** this 4th day of February, 2026.

ENTER:

*David A. Faber*

David A. Faber
Senior United States District Judge